## Richmond

THE ALEXANDRIA NATIONAL BANK, A CORPORATION, AS CO-EXECUTOR UNDER THE WILL AND CODICILS OF HENRY P. THOMAS, DECEASED, AND AS TRUSTEE UNDER AN INTER VIVOS TRUST; HENRY A. THOMAS, INDIVIDUALLY AND AS CO-EXECUTOR UNDER THE WILL AND CODICILS OF HENRY P. THOMAS, DECEASED; AND WILLIAM G. THOMAS, INDIVIDUALLY AND AS CO-EXECUTOR UNDER THE WILL AND CODICILS OF HENRY P. THOMAS, DECEASED V. JANE COLTON THOMAS.

March 5, 1973.

Record No. 7950.

Present, All the Justices.

*Brockenbrough Lamb, Jr.; Philip Tierney (Christian, Barton, Parker, Epps & Brent; Boothe, Prichard & Dudley,* on brief), for appellants.

*Edmund D. Campbell (Benjamin W. Dulany,* on brief), for appellee.

I'Anson, J., delivered the opinion of the court.

This proceeding for a declaratory judgment and injunctive relief was filed in the court below by Jane Colton Thomas, appellee herein, asking the court to hold (1) that the statutory share distributable to her as the result of her election to take against the will of her deceased husband is not to be charged with any part of the Federal estate tax imposed on the decedent's estate, and (2) that she is entitled to receive one-third of the income earned on the personal assets of the estate during the period of administration.

The basic facts are not in dispute. Henry P. Thomas, of Alexandria, Virginia, died on May 23, 1969, leaving a will dated December 7, 1965, and two codicils dated December 9, 1966, and November 2, 1967, respectively. He was survived by his widow and two sons by a former marriage. The sons, Henry A. Thomas and William G. Thomas, and The Alexandria National Bank, appellants herein, qualified as executors of the estate. The widow elected to renounce the will and take her statutory share. Under the provisions of the will the residue of the estate passes to an inter vivos trust which provides for the equal payment of its income to decedent's aforementioned sons. The bank is also trustee under the trust.

The case was heard on a stipulation of facts, and the chancellor, in a written opinion, held: (1) that the Virginia apportionment statutes entitle the renouncing widow to the benefit of the marital deduction allowed under the Federal Estate Tax Law (26 U.S.C.A. § 2056) and that her statutory share was not burdened with any portion of the Federal estate tax on decedent's estate; and (2) that the widow was entitled to receive the income earned during the period

of the administration on the personal assets of the estate that will pass to her. The appellants were also ordered to pay a reasonable sum to the widow on account of the income accrued during the period of administration on the personal assets of the estate that will ultimately pass to her, without prejudice to a final determination of the exact amount she is entitled to receive when her statutory share is finally determined.

■ The Virginia apportionment statutes were adopted as one act (Acts of 1946, Ch. 128, p. 188), and the 1950 Code revisors codified and divided the act into six sections (§§ 64-150 to 64-155,[1] inclusive). Section 64.1-161, formerly § 64-151, provides that Federal estate taxes assessed upon an estate shall be charged against the share of each beneficiary thereof in the proportion that the value of his interest bears to the total value of the estate, "except that in making such proration each such person shall have the benefit of any exemptions, deductions and exclusions allowed by such law in respect of such person or the property passing to him . . . ." One such deduction under the Federal law is the marital deduction, written into the Internal Revenue Code in 1948, which is an amount equal to the value of the interest in all property which passes or has passed from the decedent to the surviving spouse up to fifty percent of the total adjusted gross estate. 26 U.S.C.A. § 2056.

The Act of Congress imposing the Federal estate tax upon the transfer of property and authorizing the marital deduction did not attempt to provide for the distribution of the Federal estate tax burden. The Internal Revenue Code merely contemplates that the tax shall be paid out of the taxable estate unless otherwise directed by the decedent. Thus, where there is no direction by a decedent, or where decedent dies intestate, the Federal statute leaves it to the states to determine how the tax burden shall be borne by those who share in the taxed estate. *Riggs* v. *Del Drago*, 317 U.S. 95, 97-98, 63 S.Ct. 109, 110, 87 L.Ed. 106, 110-11, 142 A.L.R. 1131, 1132 (1942). Also, see *Fernandez* v. *Wiener*, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 (1945).

The 1946 Virginia apportionment statutes were designed to give a widow "the benefit of any exemptions, deductions and exclusions allowed by such [Federal] law," unless the decedent directs otherwise as provided in Code § 64-155, now § 64.1-165. *Baylor* v. *National*

1. Now Code §§ 64.1-160 to 64.1-165, inclusive.

*Bank of Commerce*, 194 Va. 1, 7, 72 S.E.2d 282, 285 (1952).[2] The present statute, § 64.1-161, has the same purpose.

After the *Baylor* case arose, and before our decision in that case, the 1952 General Assembly amended Code § 64-151 (now § 64.1-161) of the apportionment statutes. One of the changes provided that:

". . . [A] surviving spouse shall not have the benefit of the marital deduction allowable in determining the net estate under the tax law of the United States."

In 1954 the General Assembly again amended the statute by striking out the above quoted provision and restoring substantially the original statute (Code § 64-151).

Since 1954 the statute, now § 64.1-161, has remained unchanged except for a minor amendment in 1968, which has no bearing on this case.

The statutory share of a widow who renounces the provisions made for her in her husband's will is defined in Code §§ 64.1-16 and 64.1-11. The relevant portion of § 64.1-16 provides that:

"If renunciation be made, the surviving consort shall, if the decedent left surviving any direct descendants . . . , have one third of the surplus of decedent's personal estate mentioned in § 64.1-11 . . . ."

The pertinent parts of Code § 64.1-11 provide as follows:

"**Distribution of personal estate.**—When any person shall die intestate as to his personal estate or any part thereof, the surplus (subject to the provisions of Title 34)[3] after payment of funeral expenses, charges of administration and debts, shall pass and be distributed to and among the same persons, and in the same proportions, to whom and in which real estate is directed to descend, except as follows:

. . . .

2. In *Baylor* the widow did not renounce the will and took as a beneficiary thereof. Her share was actually charged with one-third of the Federal estate taxes because the testator by his will elected to take advantage of the provisions of § 64-155 of the Code (now § 64.1-165) which permitted him to provide that such taxes be charged against any portion of his estate that he might determine, despite the provisions of the apportionment statute.

3. The provisions of Title 34 relate to homestead exemptions and have no application here.

*"(2) Married persons.*—If the intestate was married, the surviving husband or wife shall be entitled to one third of such surplus, if the intestate left surviving children or their descendants . . . (b) of a former marriage . . . ; but if no such children or their descendants survive, the surviving husband or wife shall be entitled to the whole of such surplus."

Appellants first contend that the chancellor erred in holding that the statutory share of the widow in the estate of her deceased husband is not to be burdened with any portion of the Federal estate taxes imposed on his estate.

They argue (1) that the phrase "charges of administration and debts," as used in Code § 64.1-11, includes the Federal estate taxes payable on decedent's estate and, accordingly, that the widow's statutory share of the personal property of her husband is one-third of the surplus of his personal property which is determined after the payment of funeral expenses, charges of administration and debts, including Federal estate taxes; (2) that since the legislature did not amend Code § 64.1-11 after 1948, the year in which the marital deduction was allowed under the Federal law, it intended to deny a renouncing spouse her right to take advantage of the marital deduction and that provisions of § 64.1-161 allowing the deduction; and (3) that the provisions of Code § 64.1-161 are not applicable because the testator expressed directions for the payment of the estate and inheritance taxes as provided in § 64.1-165.

In support of their first assertion, appellants rely on the opinion of Judge Brockenbrough Lamb, of the Chancery Court of the City of Richmond, now retired, in *Moon* v. *Moon,* reported in *Opinions of Judge Lamb,* Volume 1, pp. 109-112 (October 8, 1946), appeal refused by this court *sub nom Virginia Norvell* v. *Bank of Commerce & Trusts, Committee of J. Luther Moon, and others,* 186 Va. lxx (1947).

In *Moon* Judge Lamb held that the language "surplus" after payment of "charges of administration and debts" in the then Code § 5273, now § 64.1-11, meant the net distributable personal estate after the payment of all debts, which included Federal estate taxes. However, Moon had died before the 1946 Virginia Apportionment Act became effective, and before the marital deduction was written into the Federal law, and Judge Lamb made no reference to the Apportionment Act in his opinion.

In *Campbell, Ex'r* v. *Lloyd, et al.,* 162 Ohio St. 203, 122 N.E.2d 695 (1954), *In re Estate of Hurlbut,* 126 Vt. 562, 238 A.2d 68 (1968),

and *Del Mar* v. *United States*, 129 U.S. App. D.C. 51, 390 F.2d 466 (D.C. Cir. 1968), also relied on by appellants, there were no state apportionment statutes involved.

█ It is perfectly manifest from the history of Code § 64.1-161 that the legislature intended to give a surviving spouse the benefit of the marital deduction allowed under the Federal estate tax law. Code § 64.1-161 is subsequent in time to the passage of Code § 64.1-11, and we have said that when a later act of the legislature is clear and unambiguous in its terms and deals fully and completely with the subject, if there is any repugnancy between it and an earlier statute the earlier yields to the later expression of the legislative will. *N.&W. R.Co.* v. *Virginian R.Co.*, 110 Va. 631, 644, 66 S.E. 863, 867 (1910). Thus Code § 64.1-11 must be read along with § 64.1-161. When Code § 64.1-11 is read and considered along with § 64.1-161, it is evident that the phrase "charges of administration and debts" found in the former statute was not intended to include the payment of the Federal estate taxes before determining a surviving spouse's statutory share. To hold otherwise would give no meaning to the latest expression of the legislative will providing that in making the proration of taxes under the statute a person shall have the benefit of any exemptions, deductions and exclusions allowed under the Federal estate tax law.

The Federal estate tax is levied on the total gross estate less the deduction of funeral expenses, debts, the marital deduction, charitable bequests and other exemptions. Thus the share to be received by the widow in the present case is not included in the taxable estate of the decedent under the Federal estate tax law, since her statutory share is less than the fifty percent allowable as a marital deduction. Virginia's apportionment statute is based on the principle that Federal estate taxes should be borne by those who receive property which has been included in the taxable estate, and that property which has not been included in determining the tax shall not bear any part of the tax burden.

A number of states have apportionment statutes substantially similar to Virginia's, and the courts of those states have construed their statutes to allow a surviving spouse his or her statutory share in the deceased consort's estate undiminished by any charge for Federal estate taxes. For example, see *Jerome* v. *Jerome*, 139 Conn. 285, 292-93, 93 A.2d 139, 143 (1952); *Estate of Buchhantz*, 120 Cal.App. 2d 92, 101-103, 260 P.2d 794, 798-800 (1953); *In re Fuchs' Estate*,

60 So.2d 536, 537 (Fla., 1952); *Re Wolf's Estate*, 307 N.Y. 280, 121 N.E.2d 224 (1954); *Erieg Estate*, 439 Pa. 550, 267 A.2d 841 (1970).

In those states where there are no apportionment statutes the decisions are conflicting. Some courts have applied a so-called doctrine of "equitable apportionment" and have held that a widow is entitled to her intestate share unburdened by Federal estate taxes despite the absence of such statutes, while others have refused to follow the doctrine. The divergent views are collected in *In re Glover's Estate*, 45 Haw. 569, 371 P.2d 361 (1962). See also *Spurrier* v. *First National Bank of Wichita*, 207 Kan. 406, 485 P.2d 209 (1971).

We cannot attribute the failure of the legislature to amend Code § 64.1-11 after it enacted the 1946 Apportionment Act, and restored the marital deduction by striking out the 1952 amendment to § 64-151 during its 1954 Session, as an indication that the taxpayers of this State were intended to be deprived of the benefits of the 1948 marital deduction amendment of the Federal Code.

Appellants also say that since the testator expressed directions for the payment of the estate and inheritance taxes, under the provisions of Code § 64.1-165 the apportionment statutes are not to be applied. The pertinent part of § 64.1-165 provides that when "any person by will or by written instrument executed inter vivos [makes] direction from (sic) the payment of such estate or inheritance taxes and [designates] the fund or funds or property out of which such payment shall be made," such provisions of the will or instrument executed shall control and the apportionment statute (§ 64.1-161) is not to be applied.

In support of their arguments, appellants rely on a provision in the second codicil to the will, that "It is my desire that the burden of estate and inheritance taxes shall be borne by the beneficiaries under this will in proportion to their respective shares . . . ." The answer to that argument is that the widow is not a beneficiary under the will since she elected to take her statutory share against the will and codicils. The second codicil changed the testator's original will, which provided that "all death taxes assessed against or in respect of my taxable estate . . . , whether or not the assets in respect to which such taxes have been imposed pass under the will shall be paid and charged as a cost of administration of the estate passing thereunder." After the second codicil, the will became silent with respect to the burden of bearing the estate tax by the beneficiaries of property not passing under the will. Moreover, there are no provi-

sions in the second codicil designating the fund or funds or property out of which payment of the estate tax should be made.

We hold that the statutory share of the widow in her deceased husband's estate is not burdened with any part of the Federal estate tax imposed on the decedent's estate.

We now reach the final question.

Appellants contend that under the provisions of Code § 55-255.1, all income earned on the personal assets of the estate during the period of administration shall be paid to the tenants of the inter vivos trust to which decedent's residuary estate passes.

As a subsidiary contention, the appellants say that if the widow is entitled to share in the income earned, her share is limited to assets that would ultimately pass to her and would not include any income earned on assets thereafter sold by the executors to pay debts, taxes, and expenses of administration. No authorities are cited in support of this position.

We do not agree with either contention.

On the other hand, we agree with the widow's contention, in her assignment of cross-error, that she is entitled to receive one-third of the income earned during the period of administration on all of the personal assets of the estate, not just the income earned during the period of administration on the share of the personal assets of the estate which will ultimately pass to her.

As aptly stated by the chancellor in his written opinion, Code § 55-255.1 "concerns itself with the distribution of earned income during the administration between testamentary tenants and the residuary estate principal, and not with earned income payable to others by reason of legacies or statutory shares." Thus the statute applies to property passing under a will and not to property passing *dehors* a will. The widow, by renouncing the will, nullified her interest as one of the testamentary income beneficiaries (*In re Schnitzer's Will*, 118 N.Y.S.2d 779, 784 (1952)), and "she was thereby placed in precisely the attitude she would have been in had the husband died intestate as to his personal estate." *Nelson's Adm'r* v. *Kownslar's Ex'r*, 79 Va. 468, 477 (1884); *First National Bank* v. *Hughson*, 194 Va. 736, 747, 74 S.E.2d 797, 804 (1953).

A surviving spouse who has elected to take against the will of the deceased spouse is entitled to her statutory share of the income earned on all the personal assets of decedent's estate during the period of administration. Code §§ 64.1-11 and 64.1-16. See also *First Union National Bank* v. *Melvin*, 259 N.C. 255, 263-64, 130

S.E.2d 387, 391-92, 394 (1963); *In re Dixon's Estate*, 73 Wyo. 236, 278 P.2d 258, 50 A.L.R.2d 1240 (1954); *In re Estate of Hurlbut*, *supra*, 126 Vt. 562, 238 A.2d at 70; Annot., "Surviving spouse who elects to take against will as entitled to increase or profit of estate accruing after testator's death," 50 A.L.R.2d 1253 (1956), and the cases there collected.

We hold that the widow is entitled to one-third of the income earned on all the assets of the estate during the period of administration which is not used to pay funeral expenses, costs of administration and debts, which do not include Federal estate taxes. Therefore the widow is entitled to her share pro-rata of all distributions of income from her husband's estate during the period of administration.

For the reasons stated, the decree of the chancellor is modified to the extent that the widow is entitled to receive one-third of all the income distributable during the period of administration. Her pro-rata share of the distributable income is not limited to income earned on the assets that ultimately pass to her.

*Modified and affirmed.*