## CIRCUIT COURT OF THE CITY OF RICHMOND

Ruth G. Phaup

v.

Mary Lee Phaup
and A. C. Epps

March 5, 1991

Case No. HA-397-4

By JUDGE RANDALL G. JOHNSON

This is an action by a widow to have the court assign her dower. The parties have stipulated as to all of the material facts in the case and have submitted briefs and oral arguments in support of their respective positions.

Hunter H. Phaup died testate on July 20, 1989, in the City of Richmond. Ruth G. Phaup, his widow, is the plaintiff. The defendants are Mary Lee Phaup, Mr. Phaup's sister and sole heir-at-law, and A. C. Epps, the executor of Mr. Phaup's estate.

At his death, Mr. Phaup owned, in his own name, five parcels of real estate, with a total value of $630,000.00. They are:

| | |
|---|---|
| 1. Principal Residence | $335,000.00 |
| 2. Brook Road Property | 15,000.00 |
| 3. Broad Street Property | 135,000.00 |
| 4. Maury Street Property | 100,000.00 |
| 5. Marx Street Property | 45,000.00 |

Mr. Phaup's will, after making some specific bequests of personal property, directed that one-half of his residua-

ry estate be placed in trust, which trust was to be funded by the marital residence and such other property as his executor deemed advisable. The income of the trust was to be paid periodically to the widow. Upon the widow's death, or upon Mr. Phaup's death if his wife predeceased him, the trust was to be distributed to his sister. The widow, however, renounced her husband's will under the provisions of § 64.1-13 of the Code of Virginia, and the parties have been unable to agree on a proper assignment of her dower.

The parties' disagreement involves the principal residence, which was the marital abode of the plaintiff and decedent. The house was built in 1951, and plaintiff and her husband lived there together until his death. It is the plaintiff's position that the equities of the case demand that she be given the house as her dower, with the court ordering her to pay to the defendant a sufficient sum of money to make up for the excess of the house's value over the one-third of decedent's real property to which she is entitled. Since decedent's real estate has a total value of $630,000.00 and since the principal residence has a value of $335,000.00, plaintiff would have to pay defendant $125,000.00 under plaintiff's theory of the case.

On the other hand, defendant takes the position that the court has no power to allow plaintiff to receive real property which has a value far exceeding the widow's entitlement. defendant has offered, and still stands ready, to assign as dower some combination of property approaching plaintiff's entitlement and making up any difference with a cash payment to plaintiff. The court, then, must choose one of these competing assignments or devise some other assignment permitted by law or equity.

In stating her position before the court, the widow readily concedes that the court has the power to make the assignment suggested by her *or* the assignment suggested and offered by the heir. The equities of the case, she argues, require the assignment she seeks.

The heir, however, argues that the assignment sought by the widow is legally impermissible; that is, that since the assignment of dower cannot be made totally in kind, the court has no power to assign real estate worth more than the dower interest in exchange for the widow's payment

of the difference to the heir. The court rejects this argument for two reasons.

First, the heir's argument in this regard is totally defeated by her own suggested assignment of dower. This is true because in attempting to persuade the court that the widow's assignment of dower should consist of specific parcels of real estate *and* an amount of cash, the heir impliedly, but necessarily, recognizes the court's power to "mix" real estate and cash in making such an assignment. There is no legal difference between giving a widow real property worth *less* than her dower interest and requiring that the difference be made up by a cash payment from the heir to her and giving a widow real property worth *more* than her dower interest and requiring that the difference be made up by a cash payment from the widow to the heir. In either case, something other than a totally in kind assignment of dower is made, cash having to be paid by one party or the other to make up the difference between the value of the dower interest and the value of the real property assigned.

Second, the court notes the wide array of remedies available to it when dower cannot be assigned "totally" in kind. *See* Va. Code §§ 64.1-34 through 64.1-36; 6B Michie's Jurisprudence, *Dower*, § 57 *et seq.* Indeed, Va. Code § 64.1-36 allows a court, in an appropriate case, to order the real estate sold and the widow's dower interest to be paid out of the sales proceeds. The court finds it inconceivable that it has the power to sell property to a stranger and pay to the parties their respective interests but does not have the power to assign that same property to the widow and require her to make up the heir's interest with cash. The court concludes that it does possess such power.

Having concluded that it has the power to make either of the assignments suggested by the parties, the court must now decide whether the equities of the case require that either be made. As already noted, the residence in question was built in 1951. It was the marital abode of plaintiff and decedent from that time until decedent's death in 1989, a period of 38 years. There is no evidence that the heir or anyone else ever lived in the home, or that it has any special sentimental significance to the heir. The heir has comfortable and secure living quarters

without regard to the subject residence, and there is little danger that the heir will "need" the residence, decedent's estate -- most of which will go to the heir -- being approximately $4,491,500.00. Under all of these circumstances, the court is compelled to find that the equities of the parties overwhelmingly require an assignment of the residence to the widow with the widow making a cash payment to the heir of $125,000.00.

The remaining dispute between the parties concerns the appropriate apportionment of estate taxes. The heir argues that since the decedent's will provides that estate taxes be considered a cost of administering his estate, the widow's statutory share of the estate must be reduced by the estate taxes attributable to that share. This would have the effect of depriving the widow of the marital deduction generally allowed by law.

By contrast, the widow argues that since she has renounced the will, the provision in the will just referred to is of no consequence and that she is entitled to the full marital deduction allowed by law. Once again, the court agrees with the widow.

In *Alexandria National Bank v. Thomas*, 213 Va. 620, 194 S.E.2d 723 (1973), a decedent's heirs also argued that a renouncing widow's share was subject to estate taxes. In rejecting that argument, the Supreme Court stated:

> In support of their arguments, appellants rely on a provision in the second codicil to the will, that "It is my desire that the burden of estate and inheritance taxes shall be borne by the beneficiaries under this will in proportion to their respective shares . . . ." The answer to that argument is that the widow is not a beneficiary under the will since she elected to take her statutory share against the will and codicils. 213 Va. at 626.

While the heir in the case at bar argues that *Thomas'* holding has no application where a decedent specifically directs that estate taxes be considered a cost of administration, such an argument is antagonistic to the very concept of will renunciation. If, as the heir argues, a decedent may burden a renouncing widow or widower with

estate taxes, such widow or widower is deprived of his or her full renunciation rights. Indeed, a crafty testator could even devise a will placing such a costly tax burden on the spouse that renunciation itself would be a penalty. This court does not read the dicta in *Thomas* cited by the heir as supporting such a result. It is this court's holding that having renounced her husband's will, the widow renounced that will for all purposes, including any provisions in the will regarding estate taxes. Her share under her renunciation must be paid without regard to such provision here.