## Staunton

ANNE L. BAYLOR v. NATIONAL BANK OF COMMERCE OF NORFOLK, AND OTHERS.

September 10, 1952.

Record No. 3938.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*William C. Worthington* and *James G. Martin & Sons*, for the appellant.

*Tazewell Taylor, Jr., James M. Robertson, Willcox, Cooke & Willcox* and *Richard M. Smith*, for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

Corydon M. Baylor, a citizen of Norfolk, Virginia, died on August 9, 1949, testate, leaving an estate (consisting of real and personal property, and life insurance policies payable to named beneficiaries) valued at $698,546.22. His executors and trustees, National Bank of Commerce of Norfolk and Elmore S. Baylor, instituted this suit seeking a construction of the will.

The question presented is whether the testator's widow, Anne L. Baylor, is entitled to receive one-third of the gross personal estate or one-third of the personal estate, diminished by the payment of costs of administration, funeral expenses, debts, estate and inheritance taxes, etc. The trial court held that she was entitled to one-third of the net personal estate.

The pertinent paragraphs of the will, bearing date April 5, 1944, are designated as Items 1 and 6, and are as follows:

"ITEM 1. I direct that all my just debts, funeral expenses and any inheritance, estate, and transfer taxes which may be assessed against my estate, or any beneficiary under this Will, including any share of Federal Estate or other taxes which may be chargeable against any person or persons who may receive any proceeds of life insurance upon my life be paid by my Executors, hereinafter named, as soon as practicable after my death.

"I also direct that my Executors have a proper inscription placed upon my tombstone, and a marker, to be selected by them, at my grave, the cost thereof to be paid by them out of my estate."

"ITEM 6. I give and bequeath unto my said wife, Anne L. Baylor, absolutely, one-third of my personal estate; and I also give and devise unto my said wife, Anne L. Baylor, an undivided one-third interest, for and during the lifetime of the said Anne L. Baylor, in all of my real estate.

"I make the foregoing provisions for my said wife in lieu of her dower and distributive share in my said estate."

The testator, in Items 7 and 8, created two trust funds of $10,000 each for the benefit of his two sisters, and in Item 9 gave $1,500, upon conditions, to one of his employees. In Item 10 he devised and bequeathed the rest and residue of his estate, real and personal, to his four children, in equal shares, one-fourth to each of his three adult children, and one-fourth to his named trustees for the use and benefit of his infant son, Corydon M. Baylor, Jr.

The testator, by codicil bearing date November 11, 1947, made several changes in his will and revoked the provisions for the widow made in Item 6, and in lieu thereof provided:

"I give and devise unto my said wife, Anne L. Baylor, for and during her life, or until she remarries, my residence, No. 7407 Glencoe Place, Lochaven, Norfolk, Virginia, where I now reside, together with the lot upon which the same is located, and upon the death of my said wife, or upon her remarriage, I give and devise said residence and lot to my son Corydon Mercer Baylor, Jr., in fee simple. I also give and bequeath unto my said wife, Anne L. Baylor, absolutely, one-third of my personal estate; and I also give and devise unto my said wife, Anne L.

Baylor, an undivided one-third interest, for and during the lifetime of the said Anne L. Baylor, in all of my remaining real estate. Upon the death of my said wife, Anne L. Baylor, the undivided one-third interest in all of my remaining real estate, which she is hereby given for and during her lifetime, shall pass and be disposed of pursuant to the terms of Item 10 of my said last will and testament dated the 5th day of April, 1944, as modified and amended by Paragraph (3) of this codicil thereto, hereinafter set out.

"I make the foregoing provisions for my said wife in lieu of her dower and distributive share in my said estate."

The widow's basic contention is that the testator, by the bequest to her in the following language: "I also give and bequeath unto my said wife, Anne L. Baylor, absolutely, one-third of my personal estate," intended that she should receive one-third of his personal estate without diminution by reason of debts, costs of administration, funeral expenses and death taxes.

The widow is claiming under the will, not against it, and hence she is bound by all of its provisions. If she had elected to renounce the will and claim dower and her distributive share of the personal estate, the costs of administration, funeral expenses and debts would have been deductible in determining the base for ascertaining the fractional part of the estate bequeathed to her. Code, secs. 64-11, 64-13. The same principle is applicable to an estate passing by will, unless the testator otherwise directs.

It was said in *Edmunds* v. *Scott*, 78 Va. 720, 726: "The law of Virginia is that all the debts or liabilities of the testator must be paid before any bequests can be effectual * * * and the first mandate of the will is that all the just debts of the testator should be promptly paid * * *."

\* \* \* \* \* \*

"The will of Thomas E. Watkins does not charge his debts on his real estate, but indicates his choses in action and other personalty as a fund to pay his debts and money legacies. In such case, the rule laid down in *Elliott* v. *Carter*, 9 Gratt. (50 Va.) 541, 549, must be applied. The personal property at large is first to be applied to the payment of debts; and when legacies are to be used to pay debts, the first liable is the residuary legacy * * *, and the next are the general pecuniary legacies, then the specific legacies, and lastly the real estate devised by

the will." To the same effect see *Elliott* v. *Carter,* 9 Gratt. (50 Va.) 541; *Newton* v. *Poole,* 12 Leigh (39 Va.) 112; *Gaw* v. *Huffman,* 12 Gratt. (53 Va.) 628; *Leavell* v. *Smith,* 99 Va. 374, 38 S. E. 202; *Frasier* v. *Littleton,* 100 Va. 9, 40 S. E. 108.

The language of the will construed in *Newton* v. *Poole, supra,* was "I give to my beloved wife, besides and above the use of one-third of my real and personal estate, * * *" certain specified tangible personal property. The court held that the widow was entitled to the tangible personal property mentioned and one-third of the personal estate diminished by debts and costs of administration.

In *Wells* v. *Menn,* 158 Fla. 228, 28 So. (2d) 881, 169 A. L. R. 892, it was said: "We approve the better rule which provides that when a testator devises ten per cent of his estate, or any fractional part thereof, to a named beneficiary it has reference to ten per cent of the net or distributable part of the estate." The several cases cited in the opinion of the Supreme Court of Florida support the conclusion, as do a number of other cases cited in the Annotation at the end of the opinion in 169 A.L.R., p. 903.

A testator has a right to designate that part of his assets which he desires to be burdened with the payment of his obligations, but in the absence of specific directions to the contrary, the order of liability of the assets to the payment of such obligations is as hereinbefore stated. The testator in the will now under consideration was precise in directing that his executors not only pay his debts, funeral expenses, inheritance and transfer taxes, but taxes which might be chargeable against any person or persons who might receive any proceeds of life insurance upon his life, and to pay them "as soon as practicable after" his death. This is equivalent to stating that all the obligations enumerated must be paid from the general personal estate.

The testator made no distinction between debts, funeral expenses and State inheritance and Federal transfer taxes. It is clear from the language used that he intended all of the items to be treated alike and to be paid in the same manner and from the same fund. Indeed, the trial court, in its well considered opinion, said: "The language used is subject to no other interpretation. Nor is there any expression elsewhere in the will, or in the codicil, indicating a different intent. * * * As the debts must be

deducted from the personal estate before the widow's one-third thereof may be determined, it follows, from what has been said, that the funeral expenses and taxes mentioned must likewise be deducted therefrom prior to such determination. Any other conclusion would fail to give effect to the provisions of the will.''

The widow contends that that part of the will expressly declaring that the provisions made for her were ''in lieu of her dower and distributive share in my said estate,'' is conclusive proof of testator's intention to give his widow one-third of his gross personal estate undiminished by any deduction.

The only authority cited in support of this contention is Muse v. Muse, 186 Va. 914, 45 S. E. (2d) 158, 2 A. L. R. (2d) 603. The facts in the cited case were that the widow was bequeathed a legacy of $7,000, certain personal property absolutely, and rents from the real estate for life. The remainder in the real estate and other personal property was devised and bequeathed to testator's brothers and sisters. The widow elected to accept the provisions of the will. The personal estate was not sufficient to pay the legacy. It was held that the provisions for the widow were superior to all other devises and bequests and the legacy was a charge upon the real estate devised to others.

In passing upon this contention, the trial court stated that appellant ''was entitled to receive ahead of all other beneficiaries whatever the testator intended she should receive in lieu of her distributive share.'' The Muse Case is no authority for appellant's contention that the testator intended to bequeath to her one-third of his gross estate.

Appellant's next contention is that the court erred in failing to apply the provisions of the Apportionment statutes. These statutes were adopted as one act (Ch. 128, Acts of 1946, p. 188). The 1950 Code revisors codified and divided this act into six sections (64-150 to 64-155, inclusive). Section 64-151 provides that Federal estate taxes and State inheritance taxes assessed upon an estate shall be charged against the share of each beneficiary thereof in the proportion that the value of his interest bears to the total value of the estate, ''except that in making such proration each such person shall have the benefit of any exemptions, deductions and exclusions allowed by such law in respect of such person or the property passing to him * * *.''

Appellant's argument is that the Apportionment statutes

preserve to a widow the benefit of the Federal Revenue Act of 1948, Sec. 812(e); (Internal Revenue Code, 26 U.S.C.A. sec. 812(e), effective April 2, 1948) allowing a marital deduction of all property passing from a decedent to a surviving spouse up to a maximum of fifty per cent of the total estate. The Act of Congress imposing a tax upon the transfer of property from a decedent and authorizing the marital deduction, did not change the applicable state law as to the devolution of property at death. "The intent of Congress was that the federal estate tax should be paid out of the estate as a whole, and that the distribution of the remaining estate and the ultimate impact of the federal tax should be determined under the state law." *Riggs* v. *Del Drago,* 317 U. S. 95, 63 S. Ct. 109, 87 L. ed. 106, 142 A. L. R. 1131.

It is true, as appellant contends, that the Virginia Apportionment statute was designed to give to the widow "the benefit of any exemptions, deductions and exclusions allowed by such (Federal) law." However, the statute expressly preserves the right of a testator to designate such parts of his assets as he desires to bear the burden of all taxes. Code, sec. 64-155, provides: "But it is expressly provided that the foregoing provisions of this article are subject to the following qualification, *that none of such provisions shall in any way impair the right or power of any person by will * * * to make direction for the payment of such estate or inheritance taxes and to designate the fund or funds or property out of which such payment shall be made; and in every such case the *provisions of the will * * * shall be given effect to the same extent as if this article had not been enacted.*" (Italics supplied.)

With this emphatic language of the statute in mind, we again read Item 1 of the will, wherein the testator, in no uncertain or ambiguous language, directed his executors to pay "all my just debts, funeral expenses and any inheritance, estate, and transfer taxes which may be assessed against my estate, or *any beneficiary under* this Will, including any share of Federal Estate or other taxes which may be chargeable against any person or persons who may receive any proceeds of life insurance upon my life * * * as soon as practicable after my death." (Italics supplied.)

The testator, in making this provision for the payment of the items enumerated, simply exercised the right expressly

reserved to him in the Apportionment statutes. It appears that this point was not seriously argued before the trial judge, as he states in his opinion: "During the oral argument it was agreed by counsel that Item 1 of the will constituted an effective direction relieving the executors from the necessity of complying with the requirements of the Apportionment statute. As this appears to be in accordance with the great weight of authority there is no need of further discussion of this point." The following cases cited by the trial judge are in accord with his views: *Starr v. Watrous,* 116 Conn. 448, 165 A. 459; *In re Cudahy's Will,* 251 Wis. 116, 28 N. W. (2d) 340; *In re Horn's Estate,* 351 Pa. 131, 40 A. (2d) 471; *In re Spangenberg's Estate,* 359 Pa. 353, 59 A. (2d) 103; *In re Greenwald's Estate,* 53 N. Y. S. (2d) 937; *In re Halle's Will,* 270 App. Div. 619, 61 N. Y. S. (2d) 694; *In re James' Estate,* 40 N. Y. S. (2d) 4.

While this conclusion reduces the value of the bequest to the widow and increases the amount of the Federal estate tax, the language of the will is susceptible of no other interpretation. The memorandum computing the Federal estate tax on the estate, filed at the request of this Court, shows that the proceeds of life insurance on the testator's life, payable to the widow, was $18,007.60; the value of tangible personal property bequeathed to her was $1,200, and one-third of the net personal estate was valued at $18,466.79. The sum of these items, or $37,674.39, was the amount of the marital deduction allowed by the trial court before determining the value of the net estate subject to the Federal tax. In other words, no Federal estate tax was imposed upon that part of the testator's personal estate passing to the widow. Such a tax was assessed against the value of the widow's life estate in the real estate bequeathed to her, as such life interest is not subject to a marital deduction. See Tit. 26 Internal Code, Ch. 3, sec. 812 (e) (B).

Connecticut and Wisconsin are two of several states which have adopted apportionate statutes somewhat similar to the Virginia statutes, and have construed similar language in wills in accord with the views expressed.

In *Starr v. Watrous,* 116 Conn. 448, 165 A. 459, the court said: "The specification of succession taxes, an item outside the category of debts and other charges against the estate as such, and ordinarily having and given no place in such an in-

troductory clause, cannot be dismissed as being without significance. It must have been deliberately inserted for a special purpose and with intended meaning regarding the payment of these taxes. The testatrix must be presumed to have known that, unless she directed otherwise, the succession taxes paid would be deducted from the several legacies. The presence of the provision for them in the will evinces a desire and intention that they should be satisfied in some other way, and inclusion of them in the same classification as debts, funeral expenses, and ordinary taxes can hardly be regarded otherwise than as expressing an intention that they should be paid out of the estate in the same way and from the same funds as these other charges."

*In re Cudahy's Will*, 251 Wis. 116, 28 N. W. (2d) 340, the language of the will was as follows: "I direct that my just debts, funeral expenses and all inheritance, estate and succession taxes be paid by my executors." There were other specific devises and bequests, which were followed by the customary residuary clause. The court said: "(1) the first question is whether the direction for payment of debts, funeral expenses and inheritance, estate and succession taxes by the executors was intended to require payment of the Wisconsin inheritance tax imposed upon specific devises and bequests, out of the residue of the estate. The effect of such direction would be to free the specific legatees and devisees from payment of the taxes imposed upon their legacies and devises and to diminish the residuary estate by the amount of these taxes. * * * Direction for payment of the tax, accompanied as it is by the direction to pay debts and funeral expenses which in any case are payable before computation of the residue, followed by disposition of the residue, indicates that the testator intended to dispose of the residue subject to diminution by these items."

The trial court appointed James M. Robertson, a distinguished member of the Norfolk bar, *guardian ad litem* for the infant, who prepared an excellent brief, and appeared in this Court in his behalf. The trial court, in fixing his fee to be charged against the infant's share of the estate, should allow him expenses and reasonable compensation for services rendered on this appeal.

The decree of the trial court is affirmed and the case remanded for further proceedings.

*Affirmed and remanded*