17268

H. GRANGER GAITHER, Executor of the Last Will and Testament of Marie Tailer Gaither, Appellant, v. UNITED STATES TRUST COMPANY OF NEW YORK, Respondent

(97 S. E. (2d) 24)

*Messrs. deLoach & Wilson,* of Camden, *for Appellant,*

*Harold W. Funderburk, Esq.,* of Camden, *for Respondent,*

March 6, 1957.

OXNER, Justice.

This action was brought by appellant, executor of the will of his wife, Marie Tailer Gaither, for a construction of said instrument. Respondent, United States Trust Company of New York, is made the trustee of a trust created by Item II. Appellant is one of the beneficiaries of said trust and is also named as the general residuary legatee. The controversy relates to the property which may be used by the executor for the purpose of discharging the debts and estate and inheritance taxes.

Item I of the will is as follows: "I direct my Executor hereinafter named to pay all my just debts, last illness and funeral expenses, together with all taxes, State and Federal, of whatever nature and kind, from cash on hand or in Banks or such as shall come into his hands during his administration of this Will or from the sale or exchange of any bonds, stocks or debentures of which I may be seized and possessed if there is not sufficient cash."

In Item II the testatrix bequeathed to respondent United States Trust Company of New York "all stocks, bonds, debentures and other mixed property now in its possession and now handled by them for me under an Agency Agreement, in trust; to hold, sell, exchange, invest and/or re-invest in any manner to them deemed wise, * * *". The trustee was directed to pay the income "in equal proportions" to the testatrix' husband and her daughter "for and during the respective lives of each", after which said income, and later the corpus, was to be paid to the grandchildren of the testatrix subject to certain terms and conditions not material to this controversy.

Under Item III she bequeathed to her daughter her jewelry, personal effects, and certain furniture.

Item IV is as follows: "All the rest, residue and remainder of my property, real, personal or mixed, wherever situated, located or found, I will, devise and bequeath to my husband, H. Granger Gaither."

The securities mentioned in Item II, which were held by the trustee at its home office in New York, are valued at $635,795.62. The bonds and stocks kept by the testatrix in her possession are valued at $160,741.16. The other assets of the estate consist of $6,303.75 in cash, real estate valued at $11,300.00, and various articles of personal property appraised at $2,113.25, making the total value of the estate $816,253.78.

It was admitted in oral argument that the debts and estate and inheritance taxes amount to approximately $250,-

000.00, or considerably more than the value of the property passing under the residuary clause, and that it will be necessary to liquidate some of the stocks and bonds to raise the necessary funds to pay these taxes. It is the contention of appellant, quoting from the complaint, that "he is granted the authority to choose which of the stocks, bonds or debentures he should sell and thereby to use his discretion in such matter regardless of whether the said stocks, bonds or debentures are conveyed by Item II or Item IV." In other words, appellant contends that for the payment of debts and taxes, he is authorized, in his discretion, to sell any of the bonds and stocks given to the trustee by Item II before exhausting the securities bequeathed to him under the residuary clause. Respondent contends that appellant is required to first sell the securities passing under the residuary clause before having recourse to those in the hands of the trustee.

The Circuit Judge adopted respondent's view. He held that in raising the necessary funds to pay debts and taxes, "the Executor should first have recourse to the funds, stocks, bonds and debentures conveyed by the residuary clause of the Will until such were exhausted and upon the occurrence of that event the Executor should next have recourse to the funds, stocks, bonds and debentures in the hands of the Defendant."

The general rule is that unless otherwise directed by the will, the residuary estate must first be applied to the payment of debts and as between general legacies and specific legacies the first will abate. *Warley v. Warley,* Bailey Eq. 397; *Brown v. James,* 3 Strob. Eq. 24; *Duncan v. Tobin,* Dudley Eq. 161. In the last mentioned case the Court said: "So if he (the testator) gives particular or specific legacies to some, and the residue to others, the residue is charged with the payment of debts, because the residue consists of what remains after the payment of the particular or specific legacies and debts."

Equally well settled is the principle that subject to the rights of creditors, a testator may fix the order in which his assets shall be applied to the payment of his debts. *Pell v. Ball's Ex'rs,* Speer Eq. 518; *Drayton v. Rose,* 7 Rich. Eq. 328; 57 Am. Jur., Wills, Section 1468. In *Drayton v. Rose, supra,* the Court said: "It cannot be disputed that a testator may prescribe as to volunteers, taking under his will, the order in which his estate shall be liable for his debts, and thus in any particular instance change the course of liability which would follow from the common law." As pointed out in *Brown v. James, supra,* 3 Strob. Eq. 24: "The inquiry always is, has the testator expressed an intention to have his assets marshalled in a different manner from that prescribed by law? 'Does there appear, from the whole testamentary disposition taken together, an intention on the part of the testator, so expressed as to convince a judicial mind, that it was meant not merely to charge the estate secondarily liable, but so to charge it as to exempt the estate primarily liable?' "

The foregoing principles have been applied to estate and inheritance taxes. Annotation 37 A. L. R. (2d) beginning on page 7. We have held that a testator may designate the funds or property which shall be burdened with taxes and free any and all other gifts from diminution by estate or inheritance taxes. *Patterson v. Cleveland,* 165 S. C. 276, 163 S. E. 788. It has been further held that where there is a general direction to the executor to pay all debts, costs of administration and taxes, there is an implied direction that the taxes are to be paid from the fund which also bears the burden of debts and expenses of administration. *Starr v. Watrous,* 116 Conn. 448, 165 A. 459; *In re Cudahy's Will,* 251 Wis. 116, 28 N. W. (2d) 340; *Baylor v. National Bank of Commerce,* 194 Va. 1, 72 S. E. 282. In the last mentioned case the Court said with reference to a testamentary provision similar to Item I of the will in controversy: "The testator made no distinction between debts, funeral expenses and State, inheritance and

Federal transfer taxes. It is clear from the language used that he intended all of the items to be treated alike and to be paid in the same manner and from the same fund."

We shall now consider the will before us in the light of the foregoing principles. Item II is clearly a specific legacy. *Rogers v. Rogers,* 67 S. C. 168, 45 S. E. 176. The securities therein bequeathed were held by the Trust Company in New York under an "Agency Agreement" and could be easily identified. Unless the testatrix directed otherwise, they could not be used to pay debts and taxes until the personal property passing under the general residuary clause was exhausted. This brings us to the crux of the case, namely, whether the testatrix, considering the will as a whole, authorized the executor, in his discretion, to use the corpus of the trust estate to pay debts and taxes before resorting to the residuary estate.

The primary concern of the testatrix was the establishment of a trust for the benefit of her husband, daughter and grandchildren. The husband was given one-half of the income from the trust as long as he lived. It was in this trust that she placed the bulk of her estate. We agree with the Circuit Judge that she did not "intend to give her husband, a beneficiary of said trust, the discretionary (uncontrolled) power to sell the trust assets to pay the debts and expenses of the estate, and then receive the stocks, bonds and indentures comprising the assets of the residuary estate free and clear of any trust." Under the construction advanced by appellant, he could reduce by approximately one-third the corpus of the trust estate by paying all debts and taxes from the sale of the securities in the trust fund and receive under the residuary clause all the other stocks and bonds free of the burden of taxes. If such had been the intention of the testatrix, she would have probably first given appellant all the securities in her possession and then set up the trust in the residuary clause. This she did not do. On the contrary, the will discloses an intent to keep, as far as possible, the trust funds intact and

give to appellant in the residuary clause that which remained after the payment of specific legacies and taxes. It would certainly be unreasonable to suppose that she intended to permit the executor, her husband, to determine the quantity of the estate which he should receive under the residuary clause.

Support for the foregoing conclusion will be found in *Laurens v. McGrath*, 1 Rich. Eq. 296. The testatrix there directed that her debts should be "paid and satisfied in such manner and way," as her mother, who was named executrix, should "deem most advisable for her own interests." She then made several specific devises and bequests, some of which were to her mother. The Court held that the executrix, in paying debts, was bound to conform to the general rule, stating: "It never can be supposed that the testatrix intended, by this direction, to authorize the executrix to pay the debts out of one or more of the specific legacies, in exoneration of the others. That would defeat her expressly declared will."

The only direction as to the payment of debts and taxes given in this will was that the executor pay same "from cash on hand or in Banks or such as shall come into his hands during his administration of this Will or from the sale or exchange of any bonds, stocks or debentures of which I may be seized and possessed if there is not sufficient cash." The testatrix thereby excluded tangible personal property and real estate. In payment of debts and taxes, the executor was required to first use any money on hand and then, if necessary, resort to the sale "of *any* bonds, stocks and debentures" (italics ours) which she possessed. Appellant's counsel say that the word "any" should be given a broad construction so as to include all securities owned by the testatrix. If this is true, the testatrix thereby designated for the payment of debts and taxes practically her entire estate since the securities constituted approximately 97% of same. We do not think this is a reasonable construction. As the securities in the possession of the Trust Company were specifically

set aside for the establishment of the trust, we think the testatrix in Item I was referring to the other securities kept in her possession, which appellant says in his brief were in a lock box in a Camden bank. Doubtless she anticipated that these would be sufficient to pay debts and taxes. Having used the major portion of her securities in setting up a trust fund, it is hardly to be supposed that the testatrix intended to use a portion of the same securities to establish another fund for the payment of debts and taxes.

Finally, appellant contends that in any event the debts and taxes should be paid ratably from the assets passing under Items II and IV. He invokes what is designated as the "doctrine of equitable apportionment." The argument is made that this would enable appellant by the use of the "marital deduction" under the Internal Revenue Code, 26 U. S. A. § 151(b) to effect a considerable tax saving. It was conceded in oral argument that this question was not raised in the Court below. It is, therefore, not properly before us. It may be added, however, that there is nothing in this will to indicate an intent to provide a *pro rata* contribution and it is doubtful in those states having apportionment statutes whether same would be applicable under this will. See *Baylor v. National Bank of Commerce of Norfolk, supra,* 194 Va. 1, 72 S. E. (2d) 282.

Affirmed.

STUKES, C. J., TAYLOR and Moss, JJ., and T. B. GRENEKER, Acting Associate Justice, concur.