E. J. DILMORE, *et al., as Trustees of the First United Presbyterian Church of Clarksburg, etc., et al.*

*v.*

W. CLAIR HEFLIN, *Surviving Executor of the Will of Anna Lucile Lindsay, Deceased, et al.*

(No. 13390)

Decided October 21, 1975.

---

*Oscar J. Andre, Ernest C. Swiger, Steptoe & Johnson,* for appellants.

*Mary Frances Brown, Boyd L. Warner, Stathers & Cantrall,* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Harrison County, which held that the executors of the will of Anna Lucile Lindsay, deceased, wrongfully paid federal estate and West Virginia inheritance taxes out of the residuum of the Lindsay estate rather than charging such taxes to the respective bequests of the non-residuary legatees.

There is but one issue in the case and it is an issue of law requiring construction of the will. The question presented is whether the testatrix, by employing certain language in her will as respects the payment of taxes and in making general and specific bequests, clearly intended and authorized that federal estate taxes and West Virginia inheritance taxes be paid from a particular fund of her estate, and thus, not be apportioned according to the primary directives of *W. Va. Code* 1931, 44-2-16a, as amended.

The issue was submitted to the trial court for decision on motion for summary judgment in a civil action seeking a declaratory judgment of the rights of the parties brought by the residuary legatees of the testatrix's will against the executors[1] of the will and against all non-residuary legatees of the will. This case arose because the executors administered the estate and distributed the testatrix's bequests to the non-residuary legatees without charging these legatees with the federal estate and West Virginia inheritance taxes attributable to their respective bequests. The executors construed the will to mean that it authorized and directed them to pay such taxes from the residuum of the estate. The effect of the executors' construction was to reduce significantly the amount available for distribution to the residuary legatees, all of whom were charitable, religious, or educational organizations and, as such, otherwise exempt from the incidence of inheritance and estate taxes. See *W. Va. Code* 1931, 11-11-4, as amended. The civil action was commenced just prior to the time when the executors would have made distribution to the residuary legatees in accordance with their construction of the testatrix's will.

The judgment order appealed from placed a contrary construction on the language of the will. It required the

---

[1]During the pendency of this civil action in the trial court, one of the named executors, Rupert A. Sinsel, Esq., departed this life. This appeal proceeds in the name of the surviving executor, W. Clair Heflin, who is also a substantial beneficiary of the testatrix's bounty.

surviving executor to recover from the non-residuary legatees the amounts of estate and inheritance taxes to which their respective bequests were subject by apportionment provided by statute, together with interest of six percent from the date of the institution of the action. He was then to distribute to the appellees, as residuary legatees, their respective shares of the residuary estate, also with interest until distribution.

This litigation concerns the Estate of Anna Lucile Lindsay, an unmarried lady, who died on May 21, 1963, at the age of seventy-seven. She disposed of her property by a will executed on May 4, 1960, and a codicil executed on January 3, 1962. These two instruments were admitted to probate as the last will and testament of the decedent on May 22, 1963.

In the instrument of May 4, 1960, Miss Lindsay had made a number of small bequests, but the chief beneficiary and object of her bounty was to be her sister, Madge Lindsay, who was to receive property as a devisee and residuary legatee. In recognition of the possibility that her sister might predecease her, the testatrix provided that, if that event occurred, certain bequests already made were to be supplemented and enlarged, new bequests to other individuals were provided for, and the residuum of the estate was then to be divided among the appellees. Madge Lindsay, the sister, did predecease the testatrix, and following her death the testatrix executed the codicil of January 3, 1962. Its chief purpose, clearly expressive of the testatrix's intention, was to leave a substantial part of the testatrix's corporate stock, the principal assets of her estate, to W. Clair Heflin and to his wife, Ethel Heflin.

The assets of the Lindsay estate were appraised at over $150,000.00 in gross value. In the performance of their duties towards administration and settlement of the estate, the executors paid from the estate assets the sum of $11,582.70 to the State of West Virginia for inheritance and transfer taxes and the sum of $13,062.06 to the Internal Revenue Service of the United States Trea

sury Department for estate taxes. Thereafter, the executors made net or face amount distribution of the various general legacies to the non-residuary legatees and distributed all specific legacies not adeemed by the testatrix's *inter vivos* dispositions. Accordingly, no non-residuary legatee was required by the executors to pay taxes allocable to his or her bequest, although later the circuit court determined to the contrary.

On this appeal, the surviving executor contends that the testatrix clearly authorized and directed her executors to pay or make distribution of all non-residuary bequests tax-free and to place the burden of taxation upon the residuum of the estate. The executor urges that this intent of the testatrix was clearly expressed by reading the first paragraph of the testatrix's will. It provides:

> *"FIRST: I direct my Executors* hereinafter named, *to pay* all my just debts, the expenses of my funeral, the costs and expenses of the administration of my estate, *taxes, which may be levied or assessed against my estate, and the legacies hereinafter set forth."* (Emphasis supplied).

The executor argues that the intention of the foregoing language is made apparent by reading it in *pari materia* with the language contained in nine general legacies of money to particular persons set forth in the succeeding sections of the will and its codicil when such bequests were prefaced by the words "the net sum of." Illustrative of such bequests is the following:

> *"SEVENTH:* I give and bequeath unto W. Clair Heflin, 147 Hall Street, Clarksburg, West Virginia, *the net sum of* Two Thousand Dollars ($2,000.00)." (Emphasis supplied).

The appellant executor further contends that the testatrix's general direction to her executors "to pay … taxes, which may be levied or assessed against my estate, and the legacies hereinafter set forth(,)" coupled with the precise bequest in general legacy form of specific net sums—instructed them that all other non-resid-

uary bequests, *i.e.* the specific legacies, were to be tax-free as well.

As has been often recognized, we are dealing with two types of "death" taxes in this appeal. *See generally, Estate of Aul v. Haden*, 154 W. Va. 484, 488, 177 S.E.2d 142, 144 (1970). Congress conceived the Federal Estate Tax as a tax on the right to transmit property and, as such, chargeable against the estate as a whole, payable out of the residuary estate and not out of the particular devises or legacies, unless there were directions in the will to the contrary. *Cuppett v. Neilly*, 143 W. Va. 845, 105 S.E.2d 548 (1958). Particularly relevant is the statement in the *Cuppett* decision that:

> "Under the rule supported by the weight of authority any federal estate tax for which the estate of the decedent is liable is payable out of the residuary estate of the decedent ... and not out of any particular legacy or devise contained in the will, unless such residuary estate is not sufficient for the payment of such tax or unless the testatrix has clearly provided otherwise by testamentary direction to the executor." *Id.* at 865 of the West Virginia Report.

On the other hand, the West Virginia Inheritance and Transfer Tax is a tax on the right to receive property and is chargeable against or out of each share or interest, in the absence of a specific provision to the contrary in the will. *Cuppett v. Neilly, supra,* at 866. Irrespective of the statutory distinctions regarding the chargeability of the two taxes, the *Cuppett* Court went on to recognize and apply the rule that the testator's expressions of intent ultimately control:

> "It is well settled that a testator may specify which property or class of property shall bear the burden of the taxes for which his estate is liable and may direct that the residuary estate or other funds be used for the payment of estate or inheritance taxes, but such direction must be clearly expressed in the will." *Id.* at 867 of the West Virginia Report.

In the year following the *Cuppett* decision, the West Virginia Legislature modified the effects of the Court's holdings in *Cuppett* with the enactment of *W. Va. Code* 1931, 44-2-16a, as amended. This statute specifically provides that the Federal Estate Tax, like the West Virginia Inheritance and Transfer Tax, should henceforth be charged to the particular legatees and devisees proportionate to the interest taken under the will, rather than burdening the assets of the estate generally, unless the will otherwise provided. The pertinent part of the statute is as follows:

> "[T]he amount of the tax so paid shall be prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such apportionment shall be made in the proportion that the value of the property, interest or benefit of each such person bears to the total value of the property, interest and benefits received by all such persons interested in the estate, . . . ." *Id.*

Referring to the foregoing, the appellees point out, and correctly so, that the legislation is a strong expression of public policy for apportionment of "death" taxes so that the burden of those taxes falls proportionately on those who benefit from a testamentary disposition of property. While conceding this proposition, the appellants contended below, and now here, that a following "savings clause" of the statute preserves intact the ruling of the *Cuppett* case providing that a testator may, by clear expressions of intent, apportion taxes upon his estate as he deems proper and against the general wishes of the Legislature:

> "(5) But it is expressly provided that the foregoing provisions of this section are subject to the following qualification, that none of such provisions shall in any way impair the right or power of any person by will or by written instrument executed inter vivos to make direction for the payment of such estate taxes, and to designate the fund or funds or property out of which such

payment shall be made, and in every such case the provisions of the will or of such written instrument executed inter vivos shall be given effect to the same extent as if this section had not been enacted." *W. Va. Code* 1931, 44-2-16a, *supra.*

In our view, the contentions of the opposing parties are compatible. In the absence of clear expressions of intent from the testatrix to apportion taxes as she deems proper, *W. Va. Code* 1931, 44-2-16a apportions and charges "death" taxes to the respective takers under the will according to the value of the interests received. Accordingly, the intent of the testatrix regarding apportionment of taxes must be ascertained and, if clearly expressed, applied.

West Virginia has always recognized the cardinal rule in will construction, that is, that the testator's intention controls and must be given effect, provided it does not violate some positive rule of law or public policy. *Wheeling Dollar Savings & Trust Co. v. Leedy,* W. Va. 216 S.E.2d 560 (1975); *Weiss v. Soto,* 142 W. Va. 783, 98 S.E.2d 727 (1957). In ascertaining this intention, the law requires that the entire will be considered and all of its language be given effect, if possible. *Wheeling Dollar Savings & Trust Co. v. Leedy, supra; Wooddell v. Frye,* 144 W. Va. 755, 110 S.E.2d 916 (1959); *Weiss v. Soto, supra; Wise v. Hinegardner,* 97 W. Va. 587, 125 S.E. 579 (1924); *Woodbridge v. Woodbridge,* 88 W. Va. 187, 106 S.E. 437 (1921); *Hinton v. Milburn,* 23 W. Va. 166 (1883). Further, in construing a will, the true inquiry is not what the testatrix meant to express but what the language she has used does express. *Weiss v. Soto, supra; Hunt v. Furman,* 132 W. Va. 706, 52 S.E.2d 816 (1949); *Wills v. Foltz,* 61 W. Va. 262, 56 S.E. 473 (1907); *Pack v. Shanklin,* 43 W. Va. 304, 27 S.E. 389 (1897); *Couch v. Eastham,* 29 W. Va. 784, 3 S.E. 23 (1887).

In the first paragraph of her will, Miss Lindsay clearly directed her executors to pay the taxes "which may be levied or assessed against my estate ...." She did not, however, specify which taxes—estate, inheritance or

other—should be paid. We do not consider the lack of specification to be significant. Since *W. Va. Code* 1931, 44-2-16a, *supra,* now apportions all "death" taxes alike, in the absence of clearly expressed directions of the testator to the contrary, no distinctions are required to affix the ultimate incidence of such taxes.

The initial ambiguity arising from the language of the first paragraph of the Lindsay Will, occurs because of the interposition of the final comma in the paragraph:

> "*FIRST:* I direct my Executors . . ., to pay . . ., taxes, which may be levied or assessed against my estate, and the legacies hereinafter set forth." (Emphasis supplied).

From this language alone, it is not clear whether Miss Lindsay made two directions, i.e. first pay all taxes levied or assessed against the aggregate estate and then pay or distribute the legacies, or made one direction, *i.e.* pay all taxes levied or assessed against my estate and the legacies contained in the will (thus distinguishing between legacies and the remainder of the estate), or made an unclear, and thus no, direction as to taxes. The appellees, of course, contend for the third and latter interpretation.

Without more, no court would be justified in construing the first paragraph to be a clearly expressed intention of the testatrix in regard to taxes. Once, however, the entire will is read, the testatrix's scheme of disposition and her intent as to the burden of taxes becomes apparent.

Each time Miss Lindsay employed language resulting in a bequest in the form of a general legacy in money, she preceded the monetary figure with the words, "the net sum of." The meaning of "net" is clear and commonly understood. *Webster's New International Dictionary of the English Language,* unabridged (2d Ed. 1958) defines "net" as: "Clear of, or free from, all charges, deductions, etc.; specif: *a* Remaining after the deduction of all charges, outlay, loss, etc.; as, *net* profit; *net* proceeds; *net*

income." Moreover, Black's Law Dictionary 1192 (4th Ed. 1951) defines "net" as: "Clear of anything extraneous, with all deductions, such as charges, expenses, discounts, commissions, *taxes,* etc. made." (Emphasis supplied.) Thus, Miss Lindsay's desire with respect to these legacies appears obvious; she clearly intended the general legatees to take the dollar amount she provided for in her will, not the amount provided for minus the taxes owed. The fact that this phrase was absent in the bequeathing of specific legacies is not significant. Such language would be meaningless where personalty is involved, because the thing transferred is identifiable in kind and there is no necessity for further specification or description of what is intended to be bequeathed. For example, in the context of the Lindsay Will, it would have been ludicrous for the draftsman to have prepared a specific and general legacy in the following form: "I give and bequeath unto A, *the net amount* of all of my jewelry, and the net sum of Three Thousand Dollars ($3,000.00)."[2] On the other hand, where the testatrix logically and reasonably could have signified intention to make bequests without deduction for taxes, she did.

Reading the first paragraph of the Lindsay Will in conjunction with succeeding language bequeathing general and specific legacies, this Court is of the opinion that the testatrix clearly expressed her intentions that all such non-residuary legacies were to be distributed free of, and without deduction for, "death" taxes.

The remaining problem of construction concerns which part of the estate is to be burdened with taxation. There was no special fund created or designated for tax purposes alone. The testatrix did, however, provide for the creation of a fund upon the occurrence of the death of her sister before her own demise. As noted, her sister

---

[2]The actual bequest reads as follows:
   *"FIFTEENTH:*

   . . . .

   *Section 4.* I give and bequeath unto Mable V. Alexander, all of my jewelry . . ., and the net sum of Three Thousand Dollars ($3,000.00)."

Madge predeceased Miss Lindsay. Paragraph Fifteenth of the will provided for that contingency.[3] Among other things, it directed that the residence real estate and personalty which would have gone to the deceased sister by specific devise and by residuary bequest be sold and converted into cash to satisfy the devise and bequests provided in Paragraph Fifteenth of the will.

Pursuant to the testatrix's plan of disposition, the burden of taxation was shifted also to the general estate

---

[3] *"FIFTEENTH:* In the event my sister Madge Lindsay predeceases me or dies before this my last will and testament has been admitted to probate, the devises to her contained in Paragraph Second and Third hereinabove, and the residuary bequest and devises to her contained in Paragraph Fourteenth hereinabove, shall lapse and be void, and the residue of my estate shall be distributed, as hereinafter provided.

. . . .

*Section 2.* I direct my Executors, hereinafter named, to sell at private sale or public auction, as they may deem best, all other real estate with which I may die seized and possessed, and for that purpose now vest in them full power and authority to sign, seal, execute, acknowledge for record and deliver all necessary deeds of conveyance; and I direct my said Executors to sell and liquidate all of my tangible and intangible personal property, not otherwise disposed of by me."

Subsections 3. through 8. of Paragraph Fifteenth then follow with additional general and specific legacies of sums of money and particular pieces of property benefiting various individuals. Subsection 9. of Paragraph Fifteenth follows with the residuum clause:

"*Section 9.* All of the rest and residue of my estate shall be sold and liquidated by my Executors and the proceeds therefrom shall be divided equally, as follows:

*Clause (a):* To the trustees of the First Presbyterian Church, Clarksburg, West Virginia.

*Clause (b):* To the trustees of Davis & Elkins College, Elkins, West Virginia.

*Clause (c):* To the trustees of the National and Foreign Mission Board of the Presbyterian Church of the United States, 156 Fifth Avenue, New York, New York.

*Clause (d):* To the Clarksburg Citadel of the Salvation Army, Inc., Clarksburg, West Virginia.

*Clause (e):* To the local Chapter of Kappa Sigma Pi, Inc., a West Virginia corporation, Clarksburg, West Virginia."

remaining after non-residuary bequests were satisfied. By necessary implication that remaining estate encompasses the devise and all bequests made in Paragraph Fifteenth of the will, including the residuary estate. Accordingly, the Court is of the opinion that where legacies are bequeathed tax-free, and no special fund was created by the testamentary instrument to satisfy the burden of taxation, the taxes are payable from the residuary estate, if sufficient, as the only other fund available for that purpose. *See, Cuppett v. Neilly, supra; Baylor v. National Bank of Commerce of Norfolk*, 194 Va. 1, 72 S.E.2d 282 (1952); 42 Am. Jur. 2d *Inheritance, Estate and Gift Taxes* §380 (1969).

The judgment order of the Circuit Court of Harrison County is reversed and the case is remanded to that court for final disposition consistent with this opinion.

Justice Sprouse participated in the decision of this case but resigned before this opinion was prepared, approved and announced.

*Reversed and remanded.*