377 S.E.2d 464

**FIRST NATIONAL BANK OF MORGANTOWN, a WV corp., as Executor of the Estate of Georgia S. Wilkinson, Plf. Below, Appellee,**

v.

**George McGILL and Mary Grace Gilmer, Defendants Below, Appellants.**

**No. 18348.**

Supreme Court of Appeals of West Virginia.

Nov. 29, 1988.

Rehearing Denied Feb. 22, 1989.

Charles S. Armistead, Baker & Armistead, Morgantown, for appellants.

William J. Leon, Vorbach & Gianola, Morgantown, for appellee.

McHUGH, Chief Justice:

This appeal presents us with the opportunity to determine the effect of a general clause in a will for the payment of debts, expenses and estate and inheritance taxes. Believing that the summary judgment granted in this case on this issue was proper, we affirm.

I

The testatrix, Georgia S. Wilkinson, died October 14, 1983, a resident of Monongalia County, West Virginia. Her husband predeceased her and she was survived by no children or other lineal descendants. Her will, prepared by an attorney, was executed on May 21, 1980. It provides in the second clause thereof: "I direct that my said Executor shall as soon after my death as is consistent with good business practice, discharge all of my just debts and funeral expenses, including Federal estate tax, West Virginia Inheritance Tax, and other expenses of the administration of my estate."

In subsequent clauses of her will the testatrix provided for specific devises and bequests of the following: (1) certain real estate and certain shares of stock to Mary Grace Gilmer, one of the appellants and a niece of the testatrix's deceased husband; (2) certain real estate to George McGill, one of the appellants and an heir of the testatrix's deceased husband; and (3) specific bequests to other persons, which bequests are not involved here. The residuary estate was left to various sisters and other relatives of the testatrix. The specific devises and bequests to the appellants were relatively small parts of the estate of the testatrix.

After the death of the testatrix, her executor, the First National Bank of Morgan-

town, the appellee, paid West Virginia inheritance tax due on the specific devises and bequests to Mr. McGill and Ms. Gilmer, the appellants. The appellee subsequently brought a declaratory judgment action [1] in the Circuit Court of Monongalia County, West Virginia (the "trial court"), for a construction of the will requiring the appellants to reimburse the appellee for the inheritance tax on the devises and bequests to them.

On cross-motions for summary judgment the trial court granted the appellee's (the executor's) motion and denied the appellants' (the specific devisees'/legatees') motion.[2] The trial court held that the only question presented is one of law, specifically, whether the testatrix *clearly* intended and directed the appellee (the executor) to pay the West Virginia inheritance taxes from the residuary estate. Relying upon this Court's opinions in *Estate of Hobbs v. Hardesty,* 167 W.Va. 239, 282 S.E.2d 21 (1981), and *Dilmore v. Heflin,* 159 W.Va. 46, 218 S.E.2d 888 (1975), the trial court held that the testatrix had failed to charge clearly the residuary estate with the inheritance taxes. Therefore, the trial court ruled that the appellants were liable for such taxes on the specific devises and bequests to them.

## II

The tax involved in this case is the former West Virginia inheritance and transfer tax, set forth, prior to its repeal, in chapter 11, article 11 of the *West Virginia Code.* This tax was repealed in 1985 and replaced by the West Virginia estate tax, now set forth in chapter 11, article 11 of the *Code.* The former West Virginia inheritance and transfer tax ("inheritance tax") was a tax

on the right to receive property from the estate of a testate or an intestate decedent. It was a tax on the beneficiary in proportion to the amount of the estate received. *Estate of Aul v. Haden,* 154 W.Va. 484, 488, 177 S.E.2d 142, 144–45 (1970).[3] *See also Dilmore v. Heflin,* 159 W.Va. 46, 51, 218 S.E.2d 888, 891 (1975); *Cuppett v. Neilly,* 143 W.Va. 845, 866–67, 105 S.E.2d 548, 562–63 (1958).

■ This Court has consistently recognized that the former West Virginia inheritance tax is ultimately the responsibility of the recipient of the specific property, unless the testator or testatrix clearly and specifically expresses otherwise in the will. In syllabus point 15 of *Cuppett v. Neilly,* 143 W.Va. 845, 105 S.E.2d 548 (1958), the Court stated this proposition in the following manner: "The transfer tax imposed by the [former] statute of this State is an inheritance tax on the right to receive property and in the absence of a testamentary direction to the contrary the ultimate burden of the tax rests upon the property transferred to the beneficiary." *See also Dilmore v. Heflin,* 159 W.Va. 46, 51, 218 S.E.2d 888, 891 (1975) (requiring *specific* provisions to shift liability). Similarly, syllabus point 16 of *Cuppett v. Neilly* stresses the importance of a *clear* expression of testamentary intent as to the source of payment for "death" taxes (estate and inheritance taxes):

A testator may specify which property or class of property shall bear the burden of the tax for which his estate is liable and may direct that the residuary estate or other funds be used for the payment of such tax, but such direction must be clearly expressed in the will.

---

1. *See W.Va.Code,* 55-13-4(c) [1941].

2. The trial court did not consider extrinsic evidence in the form of letters of the testatrix to her attorney or prior wills of the testatrix, which the appellants proffered to show, in their opinion, that the testatrix intended to make the specific devises and bequests to the appellants tax-free to them, as certain of the residuary devisees/legatees had received *inter vivos* gifts from the testatrix, unlike the appellants. This extrinsic evidence shows, however, that the lan-

guage of the so-called "tax clause" of the various wills of the testatrix never varied.

3. In comparison, the federal estate tax is a tax on the right to transmit property by will or under intestacy laws. It is based upon the value of the whole estate, less certain deductions. *Id.* *See also Dilmore v. Heflin,* 159 W.Va. 46, 51, 218 S.E.2d 888, 891 (1975); *Cuppett v. Neilly,* 143 W.Va. 845, 863, 866, 105 S.E.2d 548, 561, 562 (1958).

See also 1 *Page on the Law of Wills* § 4:23 (Bowe–Parker rev. 1960 and Cum.Supp. 1987) (burden of death taxes may be shifted from one person or fund ordinarily liable therefor under the law to another person or fund, if testator unambiguously so provides).[4]

The question which, as here, usually arises is whether there has been a clearly expressed intent to shift liability for death taxes from one person or fund ordinarily liable therefor under the law—here, the appellants as recipients of specific property—to another person or fund—here, the residuary estate, which is ordinarily not liable under the law for inheritance taxes. The cases relied upon by the trial court are dispositive of this question.

The will in *Estate of Hobbs v. Hardesty*, 167 W.Va. 239, 282 S.E.2d 21 (1981), contained a so-called "tax clause" which is virtually identical to the one in the present case. In *Hobbs* the tax clause stated:

FIRST: I direct that all my just debts, funeral expenses of my last illness and all the expenses of the settlement of my estate, including any taxes which may be assessed by the Federal or State Government, be paid out of my estate by my Executor as soon as conveniently may be done after my decease.

167 W.Va. at 241, 282 S.E.2d at 22. The question presented in *Hobbs* pertaining to this testamentary language was whether the entire, or merely a portion of, the federal estate tax should be credited against the former West Virginia inheritance tax.

The executor argued that the entire federal estate tax should be so credited, on the ground that the above quoted testamentary language in *Hobbs* makes the entire federal estate tax a charge upon the residuary estate, all of which was located within West Virginia. This Court disagreed. We agreed with the state tax commissioner that only a partial credit was allowable. We examined the above testamentary language in light of *W.Va.Code*, 44–2–16a(5) [1959, 1988], *see supra* note 4, which provides for apportionment of federal estate tax between or among the beneficiaries, absent specific direction in the will as to a specific fund or funds, for example, the residuary estate, from which the federal estate tax is to be paid. This Court held that there was no such specific direction in that case.[5]

In deciding that the will in *Hobbs* did not make a sufficiently specific direction for payment of death taxes to rebut the statutory presumption of apportionment of federal estate tax liability between or among beneficiaries, we stated: "The direction to the executor to pay funeral expenses, just debts, and taxes was entirely unnecessary since the law requires the executor to do all of those things." 167 W.Va. at 242, 282 S.E.2d at 23. We reiterated this principle: "A general provision in a will requiring an executor to pay state and federal taxes is entirely nugatory; it does nothing but restate one of the primary legal obligations of an executor." 167 W.Va. at 243–44, 282 S.E.2d at 23–24. Again, within syllabus point 1 of *Hobbs*, is the holding that "[w]ords in a will giving general direction to an executor to pay taxes from the estate merely restate the general law and such general words do not create a specific fund for the payment of taxes."

We recognize that there is a split of authorities on the question of whether a so-called "tax clause" in a will which contains a general direction to the personal repre-

---

**4.** To the same effect is *W.Va.Code*, 44–2–16a(5) [1988], which provides for proration of the federal or state estate tax between or among the beneficiaries, unless a contrary direction for payment, including designation of a fund or funds therefor, is made by the testator. *See also W.Va.Code*, 11–11–28 [1988].

**5.** The primary issue in *Hobbs* was the amount of the federal estate tax credit against the former West Virginia inheritance tax, rather than the precise issue before us in the present case. In

his dissenting opinion in *Hobbs*, Justice Miller disagreed with the Court's requirement of an apportionment of the federal estate tax debt to an amount equal to the federal estate tax due on West Virginia assets. He also believed that the testamentary direction in that case was sufficient, under *W.Va.Code*, 44–2–16a(5) [1959, 1988], to rebut the presumption of the beneficiaries' liability for the tax. In that regard he cited some of the cases following the majority rule, which we discuss *infra*.

sentative to pay debts, expenses and taxes, or similar "stock" language, is sufficient to exonerate the recipients of specific property under the will from estate or inheritance taxes. *See* annotation, *Construction and Effect of Will Provisions Expressly Relating to the Burden of Estate or Inheritance Taxes,* 69 A.L.R.3d 122 (1976 and Supp.1988), especially §§ 3[e], 42[c]. The majority of the jurisdictions hold that a clause in a will directing the personal representative to pay debts, expenses and taxes, or similar "stock" language, is sufficient to shift the burden of inheritance taxes from the recipients of specific property under the will to the estate.[6] The majority rule is premised in part upon the general principle that effect, if reasonably possible, is to be given to each and every part of the will, and no part thereof is, ordinarily, to be considered surplusage.

The minority rule,[7] on the other hand, emphasizes that the intent to shift the inheritance tax burden to the estate must be clearly and specifically expressed in the will, and general, "boilerplate" or "stock" language fails to indicate that the testator or testatrix gave any specific thought to shifting of the tax burden. *See In re Grondin Estate,* 98 N.H. 313, 316, 100 A.2d 160, 163 (1953).

In *Johnson v. Hall,* 283 Md. 644, 392 A.2d 1103 (1978), the court expressly rejected the majority rule as "not soundly reasoned" and expressly followed the minority rule, which the court viewed as achieving "the correct result." 283 Md. at 651, 392 A.2d at 1108. The court in *Johnson v. Hall* recognized that the majority rule is premised in part upon the argument that the grouping of estate and inheritance taxes in the same paragraph of the will as debts and expenses suggests that the testator or testatrix intended like treatment of all of these matters, and, if one assumes that taxes are to be treated like debts and expenses, the estate and inheritance taxes should be charged against the residuary estate because debts and expenses are rebuttably presumed to be chargeable against the residuary estate.

The court in *Johnson v. Hall* challenged the validity of this argument on the ground that the "grouping theory" can work equally well to *defeat* shifting of the tax burden to the estate. If one assumes that debts and expenses are to be treated like taxes, rather than *vice versa,* the debts and expenses should be chargeable to the specific devisees/legatees because estate and inheritance taxes are rebuttably presumed to be chargeable to the specific devisees/legatees, and debts and expenses are grouped together with such taxes in the will. A court is no more justified in assuming that the debts and expenses presumption—charge the estate—overrides the death tax presumption—charge the beneficiaries—than *vice versa.* Accordingly, the "grouping theory" sheds no light upon testamentary intent as to the source of payment for matters in the group, and testamentary

---

**6.** *See Morris v. Dosch,* 194 Ark. 153, 106 S.W.2d 159 (1937); *Estate of Keller,* 134 Cal.App.2d 232, 286 P.2d 889 (1955), *hearing denied* (Cal. Aug. 17, 1955); *Estate of Bourquin,* 87 Colo. 144, 286 P. 114 (1930); *Starr v. Watrous,* 116 Conn. 448, 165 A. 459 (1933); *In re Estate of Roser,* 128 Ill.App.3d 411, 83 Ill.Dec. 715, 470 N.E.2d 1135 (1984) (applying law of Florida); *Franz v. Schneider,* 14 Ill.App.2d 464, 144 N.E.2d 798 (1957); *University of Louisville v. Liberty National Bank & Trust Co.,* 499 S.W.2d 288 (Ky.1973); *Succession of Jones,* 172 So.2d 312 (La.Ct.App.), *writ of review refused,* 247 La. 718, 174 So.2d 131 (1965); *Thomas v. Fox,* 348 Mass. 152, 202 N.E.2d 912 (1964); *In re Will of Hund,* 266 A.D. 379, 42 N.Y.S.2d 505 (1943); *Lander Estate,* 416 Pa. 605, 207 A.2d 753 (1965); *Gaither v. United States Trust Co.,* 230 S.C. 568, 97 S.E.2d 24 (1957); *In re Estate of King,* 278 N.W.2d 171 (S.D.1979); *Estate of Semmes v. Commissioner,* 288 F.2d 664 (6th Cir.1961) (applying law of Tennessee); *Baylor v. National Bank of Commerce,* 194 Va. 1, 72 S.E.2d 282 (1952); *Will of Cudahy,* 251 Wis. 116, 28 N.W.2d 340 (1947).

**7.** *See Johnson v. Hall,* 283 Md. 644, 392 A.2d 1103 (1978) (involving federal estate tax, but text indicates decision would apply also to shifting of state inheritance tax burden); *In re Grondin Estate,* 98 N.H. 313, 100 A.2d 160 (1953); *In re Estate of Carrington,* 73 Ohio L.Ab. 381, 136 N.E.2d 182 (Cuyahoga County P.Ct.1956); *In re Estate of Henderson,* 46 Wash.2d 401, 281 P.2d 857 (1955); *In re Estate of Ogburn,* 406 P.2d 655 (Wyo.1965) (direction in first clause of will to pay "my just debts, taxes, funeral expenses and expense of administration of my estate" was insufficient directive to shift state inheritance tax burden from specific devisees and legatees to residuary estate).

intent to shift the tax burden to the estate must be clearly expressed. 283 Md. at 652–53, 392 A.2d at 1108. We are impressed with this rationale of the Maryland court of last resort.

The approach of the majority of the courts results in shifting of the inheritance tax burden to the estate in nearly every case because, as a probate court stated, "[n]early all wills have stock language of varying types requiring the payment of debts, taxes and costs of administration." *In re Estate of Carrington,* 73 Ohio L.Ab. 381, 384, 136 N.E.2d 182, 185 (Cuyahoga County P.Ct.1956). The majority rule consequently runs counter to the typical testamentary intent by shifting the inheritance tax burden from the specific devisees and legatees to the residuary estate, the beneficiaries of which are ordinarily the natural objects of the testator's bounty or who are at least ordinarily preferred over the specific devisees and legatees. *See Estate of Hobbs v. Hardesty,* 167 W.Va. 239, 248 n. 2, 282 S.E.2d 21, 26 n. 2 (1981) (Miller, J., dissenting) (recognizing typical testamentary preference of residuary devisees/legatees).

In the case now before us nothing in the will indicates that the testatrix preferred the appellants as specific devisees/legatees over the beneficiaries of the residuary estate in the sense of tax-free provisions for the appellants.

This Court's adherence to the rule requiring a clear and specific expression of intent to shift the estate or inheritance tax burden to the estate is demonstrated particularly in cases prior to *Hobbs.* For example, in *Dilmore v. Heflin,* 159 W.Va. 46, 218 S.E.2d 888 (1975), the will contained this clause: "FIRST: I direct my Executors ...

to pay all my just debts, the expenses of my funeral, the costs and expenses of the administration of my estate, taxes, which may be levied or assessed against my estate, and the legacies hereinafter set forth." 159 W.Va. at 50, 218 S.E.2d at 891. Chief Justice Haden, writing for a unanimous court, observed: "Without more, no court would be justified in construing the first paragraph to be a clearly expressed intention of the testatrix in regard to taxes." *Id.* 159 W.Va. at 54, 218 S.E.2d at 893.[8]

A tax clause in the will in *Cuppett v. Neilly,* 143 W.Va. 845, 105 S.E.2d 548 (1958), provided: "[I]f there is an Inheritance Tax or Government Tax *on this Fourth Bequest* [of a certain bond and General Motors stock,] I desire it paid out of my estate *and not deduct* anything from the Bond or General Motors stock[.]" *Id.* 143 W.Va. at 849, 105 S.E.2d at 553 (emphasis added). President Judge Haymond, writing for a unanimous court, held that this clause constituted a clear and specific direction to the executor to pay out of the residuary estate all taxes against such bequest. "When a legacy is expressly given tax-free, the tax is payable out of the residuary estate as the only other fund available for that purpose." *Id.* 143 W.Va. at 868, 105 S.E.2d at 563. This fourth bequest was, though, the only bequest or devise that was held to be exonerated from the inheritance taxes.[9]

■ Consistent with precedents decided by this Court, we hold that a clause in a will which contains a general direction to the personal representative to pay debts, expenses and taxes, or similar "stock" language, is not sufficient by itself to shift the liability for the former West Virginia inheritance tax from the specific devisees or legatees to the residuary estate.

---

**8.** The Court in *Dilmore v. Heflin* concluded that there was sufficient direction to charge the residuary estate with the liability for estate and inheritance taxes because other clauses in the will expressly directed the payment of specific bequests in "the net sum of," a phrase clearly indicating that the specific bequests were to be tax-free. *See* syl. pt. 2.

In the case now before us there is no language in the will such as "net sum of" or any other language shedding any light upon the intent of the testatrix as to whether the inheritance tax burden should be shifted to the estate.

**9.** *Cf. In re Chodikoff's Will,* 50 Misc.2d 86, 270 N.Y.S.2d 175 (Rensselaer County Sur.Ct.1966) (normally, when certain dispositive paragraphs are referred to in paragraph containing tax clause, but other dispositive paragraphs are not referred to in paragraph containing tax clause, recipients under dispositive paragraphs not referred to in tax clause are excluded from exoneration).

### III

The trial court decided this case on cross-motions for summary judgment. It refused to consider certain extrinsic evidence offered by the appellants. *See supra* note 2. The appellants argue that the proffered extrinsic evidence would raise material questions of fact as to testamentary intent regarding the source of payment for death taxes, thereby precluding summary judgment. We believe the summary judgment granted was proper. Extrinsic evidence is admissible to establish testamentary intent only when there is a latent ambiguity. *Transamerica Occidental Life Insurance Co. v. Burke,* 179 W.Va. 331, 336, 368 S.E.2d 301, 306 (1988) (and cases cited therein). There is no latent ambiguity here. Consideration of the language of the entire will indicates that the testatrix did not clearly and specifically *express* her intent to shift the inheritance tax burden to the estate, as required by case law. "[T]he true inquiry is not what the testatrix meant to express but what the language she has used does express." *Dilmore v. Heflin,* 159 W.Va. 46, 53, 218 S.E.2d 888, 892 (1975).

Accordingly, the governing principle is stated in syllabus point 1 of *George v. Blosser,* 157 W.Va. 811, 204 S.E.2d 567 (1974): " 'A movant is entitled to summary judgment where the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances.' *Hanks v. Beckley Newspapers Corporation,* 153 W.Va. 834 [, 837, 172 S.E.2d 816, 818] (1970)." *Accord, McCullough Oil, Inc. v. Rezek,* 176 W.Va. 638, 647, 346 S.E.2d 788, 797–98 (1986); syl., *Bell v. West,* 168 W.Va. 391, 284 S.E.2d 885 (1981).

In view of the foregoing, the final order of the trial court is affirmed.

AFFIRMED.

MILLER, J., dissents for the reasons set out in *Estate of Hobbs v. Hardesty,* 167 W.Va. 239, 282 S.E.2d 21 (1981).