**ESTATE OF William L. RENO, Jr.; Barbara G. Reno, Executrix, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–2078.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1989.

Decided Oct. 19, 1990.

Order on Grant of Rehearing In Banc Jan. 4, 1991.

James Laurence Malone, III, McDermott, Will & Emery, Chicago, Ill. (Richard L. Dees, on brief), for petitioners-appellants.

Teresa Ellen McLaughlin, Tax Div., U.S. Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Tax Div., U.S. Dept. of Justice, Washington, D.C.), for respondent-appellee.

Before HALL, MURNAGHAN and CHAPMAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

█ We are called on in the case before us to direct our attention to the interplay between (1) the federal tax code as specifically outlined in the allowance for a marital deduction, (2) the allotment of federal estate tax as directed by Virginia law, (3) the testator's intent as expressed by will, and (4) Virginia common law property principles concerning property held by husband and wife as a tenancy by the entireties. The question presented is whether a testator, under Virginia law, can direct that part of the federal estate tax due on his gross estate be paid out of property held as a tenancy by the entirety with his surviving wife, which would otherwise qualify for a marital deduction and be exempt from tax. We hold that he can and affirm the judgment of the Commissioner of Internal Revenue.

## I.

Dr. William L. Reno, the testator, died on October 8, 1978. At the time of his death, Reno owed both "probate" property, *i.e.*, property passing under his will, and non-probate property passing by operation of law. The property passing under his will consisted of certain real estate in Kentucky valued at approximately $545,200, as well as corporate bonds and other property valued at approximately $103,200. His non-probate holdings consisted of his residence in Falls Church, Virginia, and a checking account, both of which he held with his wife, Barbara Reno, as tenants by the entireties with the right of survivorship. The non-probate property was valued at $527,400. The percentages of contribution for the Falls Church, Virginia, property were approximately 88% for Reno and the remaining 12% presumably for his wife.[1]

In his will, Reno devised the Kentucky real estate to his wife for her life with the remainder in fee simple to the couple's daughter. That disposition of the Kentucky property rendered it ineligible for the marital deduction under I.R.C. § 2056(b)(1).[2] In the same paragraph of the will, Reno directed that "all death duties on this Kentucky real estate ascertainable at my death be paid by my Executrix [his wife, Barbara Reno] out of the assets of my estate other than Kentucky real estate." Reno's will made no mention of the federal estate tax marital deduction.

At the time Reno executed his will, the residue of the probate estate—that not represented by the Kentucky real estate—was sufficient to pay the state and federal estate taxes as well as the estate's expenses. At the time of Reno's death, however, the value of the residue had decreased and was no longer enough to pay those expenses.

---

1. The exact percentages of division applicable to acquisition costs between the spouses are somewhat uncertain. At oral argument, counsel for the estate expressed a belief that the contribution by Reno to the residential property was 88%. Investigation has revealed that, on the basis of the estate's federal estate tax return, Barbara Reno's contribution to the purchase price ($18,894) was 30%, making Reno's share something less than 88%. The difference might be ascribable to other tenancy by the entireties property. In any event, the exact amount of the percentage of contribution is of no moment for our purposes and to minimize confusion we have employed the 88% figure throughout.

2. All references are to the Internal Revenue Code of 1954 (codified at 26 U.S.C. §§ 1, *et seq.*), as amended, and in effect during the year here in issue, unless otherwise indicated.

The residue, left to Barbara Reno, would have been eligible for the marital deduction, I.R.C. § 2056(a), except that it was exhausted in the payment of taxes and the estate's expenses.

On April 7, 1982, the Commissioner issued a statutory notice of deficiency of $253,656. In finding a portion of that deficiency, the Commissioner determined that the estate had improperly increased the marital deduction by failing to charge the entireties property in Falls Church with the estate taxes attributable to the Kentucky real estate.[3] In order to correct the error and honor the intent as expressed in the will, the Commissioner reallocated the federal estate taxes attributable to the Kentucky real estate to the Virginia entireties property. That reallocation resulted in a reduction of the estate's marital deduction of approximately $25,981.

The estate filed a petition in the Tax Court seeking a redetermination of the assessed deficiency. The Tax Court ruled for the Commissioner, holding that Reno's will expressed his desire that his estate taxes not be apportioned among the assets of his estate. Without that expressed intent, Va. Code Ann. § 64.1–161 would have directed that estate taxes be apportioned against the asset that produced the tax. Such an apportionment is limited to the extent that "each such person shall have the benefit of any exemptions, deductions and exclusions allowed by such law." *Id.* Thus, but for the will, the Virginia property would be exempt from tax by virtue of the marital deduction and the tax due on the Kentucky property would be apportioned against that property.

The Tax Court found that Reno had taken advantage of the Virginia statute which allowed him to disturb that allocation scheme. Va.Code Ann. § 64.1–165 provides that

> none of such provisions shall in any way impair the right or power of any person by will or by written instrument executed inter vivos to make direction from

[sic] the payment of such estate or inheritance taxes and to designate the fund or funds or property out of which such payment shall be made; and in every such case the provisions of the will or of such written instrument executed inter vivos shall be given effect to the same extent as if this article had not been enacted.

The Tax Court found that by the express language of his will, Reno expressed his desire that the estate taxes *not* be apportioned among the assets of his estate. *Estate of Reno v. Commissioner,* 51 T.C.M. (CCH) 909 (1986). Since the entireties property fell within the gross estate for federal tax purposes, I.R.C. § 2040(a), Reno's direction that his estate taxes be paid out of the "assets of my estate other than Kentucky real estate" was sufficient to shift the taxes due on the Kentucky property to the entireties property, consequently reducing the marital deduction claimed. The estate has appealed that determination.

## II.

■ The estate contends that Barbara Reno's tenancy by the entireties property cannot properly be required to pay more than its proportionate share of the federal estate tax. Because the Virginia property might qualify for the marital deduction, its share of the estate tax, had Reno's will been silent on the matter, would be zero. Hence, according to the estate, the tenancy by the entireties property, in being assessed any tax, is being assessed more than its share of tax, an action the taxpayer concludes is illegal under Virginia property law. We find the proffered conclusion a doubtful reflection of Virginia law as far as collection of estate tax is concerned given Va.Code Ann. § 58.1–901 which, while concerned with Virginia estate tax, nevertheless, like the federal tax code, includes the entireties property in the decedent's gross taxable estate. We do not need to reach that question, however, since the entireties property is not subject to any disproportionate calculation of the tax due.

---

**3.** As in effect at the time of Reno's death, I.R.C. § 2056(a) permitted a marital deduction equivalent to 50% of the interests passing to the surviving spouse of a decedent. The estate took the full deduction with respect to the entireties property.

There is a distinction of controlling significance here between (1) something included in the gross estate and hence exempt from tax only to the extent it earns the benefit of an exemption, and (2) something not even included in the gross estate and hence immune from tax. Such an immunity from tax extends, for example, to property which had been owned by the decedent but sold by him or her more than three years prior to his or her death for an adequate and full consideration. I.R.C. § 2035. In contrast, the property held as tenants by the entireties had the distinct possibility of ripening in fee in Reno up until he died survived by Barbara Reno. It was clearly part of the gross estate for federal estate tax purposes. I.R.C. § 2040(a).

William Reno explicitly stated that the Kentucky real estate should pay no estate tax. To give that language effect, the tax must come out of other property in his estate. First, the residual property in the probate estate was exhausted in meeting only a portion of that tax, even though that residual also might (though in fact it did not) qualify for the marital deduction and pay no tax. Because the residual was probate property, the estate does not quarrel with it being assessed its "disproportionate" share of tax at the expense of Barbara Reno's marital deduction. *See Baylor v. National Bank of Commerce of Norfolk*, 194 Va. 1, 72 S.E.2d 282 (1985). The rest of the marital property which might qualify for the marital deduction was the tenancy by the entireties property, which passed outside of the will and hence can be termed non-probate property. By both federal and state law, however, it is still part of Reno's gross taxable estate and still responsible for estate tax unless relieved by a federal tax deduction. Because of the language of Reno's will, he voided the tenancy by the entireties property's qualification as marital deduction property to the extent that the taxes generated by the Kentucky property must come out of it.

The estate asserts that Reno could not do so, relying on Virginia property law principles governing tenancy by the

entireties property. It argues that inclusion of the entireties property in the gross estate does not permit Reno's will to charge it with taxes inconsistent with his wife's survivorship interest in the property. In support, the estate points to cases interpreting Virginia tenancy by the entireties property law. A husband may not obligate the property or subject it to his debts without the consent of his wife. *Vasilion v. Vasilion*, 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951); *In re Bishop*, 482 F.2d 381, 393 (4th Cir.1973); *In re Saunders*, 365 F.Supp. 1351, 1352–53 (W.D.Va.1973). Any attempt to sell or mortgage the property without the agreement of the wife will be ineffective, *Johnson v. McCarty*, 202 Va. 49, 55–56, 115 S.E.2d 915, 920 (1960). Similarly, the will of the dead spouse may not defeat the survivor's right to the property and any devise of the entireties property will be of no effect. *Stevens v. Sparks*, 205 Va. 128, 135, 135 S.E.2d 140, 146 (1964).

We have absolutely no quarrel with those principles of Virginia property law. We decline, however, to take the next step advocated by the estate: that the entireties property could not, for estate tax purposes, have been one of the "assets of my estate" to which Reno's will referred. The question presented here is not whether Reno can require the tenancy by the entireties property to pay a supposedly disproportionate share of the estate tax; the property can be deemed to pay a disproportionate share *only* if it first has qualified for a federal deduction from the estate. The question is whether William Reno, by will, can direct that the federal estate tax be allocated in such a way that his widow's marital deduction is reduced from its potential maximum and the estate's tax thereby increased. Both federal and state authorities hold unambiguously that he can. *Riggs v. Del Drago*, 317 U.S. 95, 97–98, 63 S.Ct. 109, 110, 87 L.Ed. 106 (1942); *Black v. Commissioner*, 765 F.2d 862 (9th Cir. 1985); *Baylor v. National Bank of Commerce of Norfolk, supra;* Va.Code Ann. §§ 64.1–161 and –165.

By federal law, Barbara Reno could, under certain conditions pertaining at the

date of his death, exclude from the gross taxable estate 50% of the property interests passing outright from William Reno to her. I.R.C. § 2056(a). Virginia state law controls the apportionment of estate taxes for collection purposes due on the remaining taxable estate. *Riggs v. Del Drago,* 317 U.S. at 97–98, 63 S.Ct. at 110. Had Reno's will remained silent concerning how estate taxes should be *collected,* Va.Code Ann. § 64.1–161 would control. That section provides that each beneficiary's share pay its proportionate share of the estate tax, "except that in making such proration each such person shall have the benefit of any ... deductions allowed by ... law." *Id.* Thus Barbara Reno, had the will remained silent on the subject or had she elected against the will, would have had the full benefit of the marital deduction. *Alexandria National Bank v. Thomas,* 213 Va. 620, 194 S.E.2d 723 (1973).

Reno's will, however, was not silent. In his will, Reno made *no* tax apportionment provision relieving the marital deduction property of a liability to pay federal estate taxes. He attempted the very opposite by asserting that the Kentucky real estate should pass free of tax (leaving only the property passing to his widow available to meet the tax calculated by purely federal concerns). He simply did not avail himself of the opportunity under the provisions of federal law creating the marital deduction to bring about under state law what would

be, in effect, an increase in disposition to his widow, if she were relieved of a share of the estate tax. In striking and direct contrast, Reno did include in his will an explicit provision regarding apportionment of estate taxes so that the Kentucky real estate would pass free of estate tax liability.[4] The provision relieving the Kentucky property of tax necessarily added tax to the otherwise marital deduction property, which included the tenancy by the entireties property. Virginia apportionment statutes explicitly permitted Reno so to designate the property that would bear the tax. Va.Code Ann. § 64.1–165.

It may be true that Virginia law prohibits Reno from using the phrase "assets of my estate" to include tenancy by the entireties property for other debt collection purposes. Yet it is undisputed, for both federal and state calculation purposes, that entireties property is part of Reno's taxable estate, I.R.C. § 2040(a), Va.Code Ann. § 58.1–901, unless relieved by other federal provisions such as the marital deduction. I.R.C. § 2056(a). The tax liability question at issue here is not raised because of the Virginia property's status as a tenancy by the entireties. Rather the question is raised because of the property's qualification for the marital deduction if the necessary steps were taken. It was the testator's refusal to take full advantage of the marital deduction that caused the IRS to

**4.** It is not justified to conclude that Reno made a palpable, inadvertent error in passing up part of the marital deduction for which he is somehow to be excused. He may well have planned with the estate of his wife as well as with his own will in mind. While he no doubt contemplated his wife's surviving him, the life expectancy of the daughter doubtless exceeded the joint life expectancy of both her parents. Reno probably foresaw the possibility of taxation of the Kentucky real estate on his wife's death if that property were bequeathed to her outright. Yet that undesirable eventuality could be avoided, without serious adverse consequences to his wife. Willing his widow a life estate in the Kentucky realty would give her, assuming there was no desire to sell, substantially all a bequest in fee would provide. By taking care to avoid conferring a taxable power of appointment in his wife under 26 U.S.C. § 2041, the ripening of the remainder on the wife's death would lead to no federal estate tax liability. A tax on Reno's

own death on the life estate and remainder may well have been deemed preferable to the taxation upon the mother's death, especially bearing in mind Reno's substantial other wealth and the generational difference in ages of mother and daughter. The interests created in the Kentucky realty were not a general power of appointment in the wife for her only power to sell was circumscribed by trust limitations substituting the proceeds for the real estate as the res. Any general power in the daughter would only arise upon her surviving her mother and focusing upon the daughter as the decedent before that time was not Reno's concern.

Having proceeded so far out of concern for his daughter, Reno, with a full and complete understanding of tax consequences, may well have opted for maximum protection through immunization from taxes on the Kentucky realty, though accomplishment of that objective necessarily led to a relatively minor increase of estate taxes on his death.

calculate additional tax. In his will, Reno could easily have stated "I direct that, for federal estate tax purposes, the marital deduction shall be reduced by the exact amount by which the Kentucky real estate would otherwise be taxed." That language would involve no determination that entireties property should be invaded to collect a tax, but only a computation of the amount of the marital property which would be deductible. Reno did not employ that language but surely it has the same connotation. Clearly in Virginia, as elsewhere, "the intent of the testator rests in the words he uses." *Wisely v. United States,* 893 F.2d 660, 665 (4th Cir.1990).

■ We have no disagreement with the Virginia common law property principles. Such principles are, however, irrelevant in the face of Internal Revenue Code § 2040(a) and Va.Code Ann. § 58.1–901, which specifically include the entireties property as part of Reno's gross taxable estate. *See Black v. Commissioner,* 765 F.2d at 864 ("If the statutory language expresses a Congressional purpose to tax the decedent's interest, that interest is includable in the decedent's gross estate regardless of whether state law would label it a 'joint tenancy' interest.") (citing *Morgan v. Commissioner,* 309 U.S. 78, 81, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940)).[5] The entireties property is thus clearly subject to estate tax unless relieved by other *federal* I.R.C. provisions, such as the marital deduction.

Reno could have taken maximum advantage of the marital deduction and thus exempted from estate tax at the time of his death one-half of his federal gross taxable estate. Such a provision in his will would have allocated the Virginia tenancy by the entireties property and some or all of the securities to the marital deduction and would have required satisfaction of the

minimized estate tax out of the Kentucky real estate.

The estate has sought to bring about just such a result regardless of Reno's explicit contrary intent expressed in the language of his will. The estate claims that because the property *could* have qualified for the marital deduction it, therefore, is, willy-nilly, non-taxable property and is thus being assessed a "disproportionate" share of the estate tax. It is undisputed, however, that 50% of the entireties property was subject to federal estate tax. I.R.C. § 2040(b)(1). It is also undisputed that Reno could have taken advantage of the marital deduction and avoided or minimized the tax. Reno, however, purposely did not choose to avoid the tax but, rather, by his will made explicit provision for apportionment of estate taxes in a manner completely exonerating the Kentucky real estate, which resulted in throwing some of the tax back on entireties property passing to his wife, thereby frustrating a deduction for property passing to her. It is unpersuasive to argue that, because the entireties property *could have* been relieved of estate tax *but was not,* it is nevertheless non-taxable and is thus bearing a disproportionate share of the total estate tax. Such reasoning would mean that, henceforth, in Virginia, a testator could not apportion estate taxes in such a way that non-probate marital deduction property is compelled to pay any share of it. To the extent a testator designates non-probate marital deduction property as the source for estate tax, on that theory, we would void the provisions of Va.Code Ann. § 64.1–165:

> that none of such provisions [requiring equitable apportionment] shall in any way impair the right or power of any person by will ... to designate the fund or funds or property out of which such payment shall be made, and in every such case the provisions of the will ... shall be given effect....

Such a result simply does not follow from Virginia case law.

---

**5.** Before the enactment of I.R.C. § 812(e) (1948), the marital deduction did not yet exist for estate tax purposes. An estate tax determined to be due could not be escaped because the decedent at death owned all of his or her property as a tenant by the entireties, although it might escape debts and similar claims other

than federal estate tax against the decedent or the entireties estate. *See Tyler v. United States,* 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991 (1930) (holding that requiring inclusion in the gross estate for tax purposes of the value of property held in tenants by the entireties form was constitutional).

The Virginia Supreme Court has held that probate property passing under the will, though otherwise eligible for a marital deduction and hence potentially non-taxable, must bear estate tax if not freed by statute or language in the will. *Baylor v. National Bank of Commerce of Norfolk*, 194 Va. 1, 72 S.E.2d 282 (1952). In *Baylor*, the Virginia Supreme Court articulated a basic principle of will construction: the intent of the testator must control. "While this conclusion reduces the value of the bequest to the widow and increases the amount of federal estate tax, the language of the will is susceptible of no other interpretation." *Id.* 72 S.E.2d at 286. Such is exactly the case here.

The entireties property passed outside the will and is non-probate property. It does not follow, however, that the property, in which Reno, up to the time of his death, owned an interest which might ripen into a fee, *is* non-taxable for federal estate tax purposes and is thus being assessed more than its share of estate tax. It is because the property *potentially* qualifies for the federal marital deduction, not because of its state tenancy by the entireties status, that must be critically examined to determine taxability *vel non*. It would be non-taxable only under certain circumstances not met here because the testator provided otherwise.

■ While the marital deduction provision contemplates a method available to taxpayers for tax reduction purposes envisioned by Congress, the deduction does not follow as a matter of course. As the Supreme Court stated in *Jackson v. United States*, 376 U.S. 503, 511, 84 S.Ct. 869, 873, 11 L.Ed.2d 871 (1964):

> [T]he achievement of the purposes of the marital deduction is dependent to a great degree upon the careful drafting of wills.

*See also Wisely v. United States*, 893 F.2d 660, 666 (4th Cir.1990) ("Deductions are a matter of legislative grace, and the taxpayer seeking the benefit of a deduction must show that every condition which Congress has seen fit to impose has been fully satis-

fied."). It is the property's inclusion in the decedent's gross estate for federal and state estate tax purposes that determines the *calculation* of the amount to be collected.

It is illogical thus to include the property as taxable in the federal and Virginia gross taxable estate and then simultaneously call it non-taxable and exclude it because, under certain circumstances under federal law, it *could* have qualified (but explicitly did not qualify) as a deduction from that estate. Reno simply did not avail himself of the provisions allowing such a deduction. As decided in *Morgan v. Commissioner*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 585 (1940), "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created shall be taxed." The federal authorities provide the law which controls calculation of the federal estate tax. That scheme is simply more encompassing than any Virginia common law property principle that would exclude tenancy by the entireties property as a collection source for that tax.

### III.

The foregoing analysis and conclusion may be unsettling to some accustomed to the common law, *i.e.*, state, rule that a tenancy by the entireties must be dealt with by both spouses before it can be reached and the rule that state law effects allocation of federal estate tax. One spouse may not act to invade tenancy by the entireties property without the cooperation of the other. Here Reno's estate, through the provision in his will calling for the charging of Kentucky real estate federal estate tax against tenancy by the entireties assets with no consent from his wife, has directed allocation to the one-time tenancy by the entireties property, though no assent by the surviving spouse has occurred.

But apparent "illogicality" only occurs if one fails to realize that, while a tenancy by the entireties is the same entity both for state purposes or for federal estate tax purposes, we are here concerned with two quite distinct, substantially different *aspects* of the same entity. For example, ordinarily a spouse's tenancy by the entireties cannot under state—here Virginia—

88888888888888888888888888888888888888888888888888888888888888888888888888888

law be unilaterally invaded by the other spouse. Yet, for federal estate tax purposes we know that the federal estate law, with regard to the first spouse to die, includes in the decedent's gross estate, with no participation or consent by the surviving spouse, a proportionate share of estate taxes due on entireties property. *Tyler v. United States*, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991 (1930).[6]

■ To that the response is made that, to the extent possible, the tenancy by the entireties proportionate share in the present case should be allocated at, and valued at, zero. On that basis, the estate contends that Reno's will provision should be voided as saddling the tenancy by the entireties with a disproportionate share.

But that does not accurately assess what was the tenancy by the entireties' proportionate share. It must be appreciated that all of the tenancy by the entireties property, for federal estate tax purposes, was part of the gross estate. 26 U.S.C. § 2040.

Congress created the marital deduction in order to equalize the effect of estate taxes in common law and community property jurisdictions. *E.g., United States v. Stapf,* 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (1963). In *Stapf,* in which the marital deduction at the time, as here, was limited to one-half of the gross estate, the Supreme Court explained:

[6] Put another way, the spouse first to die has not acted. His estate has. He must, by his death, have rendered himself incapable of action. Only by reason of that death does the tax first come into existence. The death is its "generating source." "Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other." *Tyler v. United States,* 281 U.S. 497, 502, 504, 50 S.Ct. 356, 358, 359, 74 L.Ed. 991 (1930). The first dying spouse could not act in any way to invade the tenancy by the entireties property. By the earliest time the first spouse could have acted, *i.e.,* after his death, the tenancy by the entireties property had become property owned outright and entirely individually by the surviving wife. The first to die, being dead, could not act. *Nemo est haeres viventis.*

Consider that state law tenancy by the entireties concerns all involve *joint* ownership while both spouses are still alive. Federal estate tax law, on the other hand, deals exclusively with property which *had been* but ceased, upon the first spouse's death, to be tenancy by the entireties property. In the case here, the entireties property immediately became owned outright by Barbara Reno upon her husband's death. The tax (levied on the estate and not on Reno) arose only against property then titled exclusively in Barbara Reno's name, which originated with, *i.e.,* was traceable to, Reno (26 U.S.C. § 2040(a)) and *before his death* was titled in tenancy by the entireties form. It passed from Reno to his wife at his death. It is to be doubted that Virginia law restricting invasion by one tenant without the consent of the other has any application for the resolution of the question with which we are confronted. In this connection, it is instructive to note how precisely 26 U.S.C. § 2056 eschews any nomenclature employing use of the term "tenancy by the entireties." It speaks much more precisely of "an interest passing to the surviving spouse."

That the "no invasion without the consent of the other spouse" principle has little or no justifiable application to a direction for payment of part of the federal estate tax by the estate of one of the spouses is evident when the manifest purpose behind the marital deduction is taken into account. It is passing strange to hear it argued that the will direction placing the burden on the former tenancy by the entireties property for the Kentucky real estate federal estate tax constituted an invasion of the rights of the surviving spouse. The tax is associated with property which was originally Reno's sole property, any share contributed to the tenancy by the entireties interest from assets traceable to Reno's spouse having been entirely excluded from Reno's gross estate. The interest would be entirely his if she died first. It is quite reasonable and fair, therefore, to conclude that nothing in Virginia law operates to void the will's direction.

Federal estate taxation is "eminently practical." The power to tax is "not to be restricted by mere legal fictions." It is not to be governed "by a consideration of the artificial rules which delimit the title, rights and powers of tenants by the entirety at common law." *Id.* at 503, 50 S.Ct. at 359.

In short, by the time with which we are concerned, the Virginia tenancy by the entireties law rule requiring joint action of the spouses to effect an invasion of tenancy by the entireties property no longer had any applicability. That state property law is directed at an entirely different aspect than the federal estate tax aspect which engages our attention.

One should take into account the consideration that "[t]he intent of Congress was that the federal estate tax should be paid out of the estate as a whole." *Riggs v. Del Drago,* 317 U.S. at 97–98, 63 S.Ct. at 110, cited approvingly in *Baylor v. National Bank of Commerce of Norfolk,* 194 Va. 1, 72 S.E.2d 282 (1952), with only what remains after the federal estate tax is calculated to be determined by state law rules as to devolution and distribution of that remainder. *Del Drago,* 317 U.S. at 98, 63 S.Ct. at 110.

[T]he marital deduction permits a deceased spouse, subject to certain requirements, to transfer free of taxes one-half of the non-community property to the surviving spouse. Although applicable to separately held property in a community property state, the primary thrust of this is to extend to taxpayers in common-law states the advantages of "estate splitting" otherwise available only in community property states. The purpose, however, is only to permit a married couple's property to be taxed in two stages and not to allow a tax-exempt transfer of wealth into succeeding generations. Thus the marital deduction is generally restricted to the transfer of property interests that will be includible in the surviving spouse's gross estate.

■ There are two expected restrictions. I.R.C. § 2056(b)(4)(A) provides that, in computing the marital deduction, "there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax has on the net value to the surviving spouse of such interest...." The value of any interest passing to the surviving spouse, therefore, is reduced by *any* estate or inheritance taxes payable from that interest. Additionally, the property designated as passing to the surviving spouse is charged with any encumbrances or obligations. *See* I.R.C. § 2056(b)(4)(B) (calling for any encumbrance imposed by the decedent to be taken into account in determining the net value to the surviving spouse).

To qualify as property escaping the tax, the tenancy by the entireties must satisfy these federal requirements for the marital deduction. The estate's position is analogous to that of the respondents in *Stapf*, 375 U.S. at 127, 84 S.Ct. at 255. In response to the narrow construction urged by the estate there, the Supreme Court noted that

[T]he governing principle, approved by Congress ... must be a marital deduction is allowable only to the extent that the property bequeathed to the surviving spouse exceeds in value the property such spouse is required to relinquish.

*See also Commissioner v. Bosch*, 387 U.S. 456, 464, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) ("[W]e believe [Congress] intended the marital deduction to be strictly construed and applied.").

Reno's estate immediately encounters the unambiguous will direction, which, unless declared null and void, must reduce the tax free amount of marital deduction to the extent of property diverted from the surviving spouse. *See Bosch*, 387 U.S. at 457, 87 S.Ct. at 1778 ("We hold that where the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court."); *Estate of Salter v. Commissioner*, 545 F.2d 494, 497 (5th Cir.1977) ("Marital deduction and conditions under which it may be taken are matters of federal law."); *Estate of Wycoff v. Commissioner*, 506 F.2d 1144, 1149 (10th Cir.), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1974) ("The value of the marital deduction and the effect of death taxes upon the extent of the marital deduction are to be determined as a matter of federal law. Thus, the orders of state probate courts are not applicable.").

■ The attempted answer of the estate amounts to a contention that here the maximum marital deduction possible (50% of the gross estate), unencumbered by estate tax, I.R.C. § 2056(b)(4)(A), should, nevertheless, be increased by the amount of the tax on the Kentucky realty since taking it into account involves requiring payment of a tax in effect assessed against one spouse without her consent. That amounts to transferring from one aspect of tenancy by the entireties law (federal) to the other (state) aspect. Reno died when the marital deduction could not exceed 50% of the gross estate. No one contests that the supposed non-collectability under state law of tenancy by the entireties property must give way to supreme federal law to the extent the marital deduction exceeded 50% of the gross estate, demonstrating that state law had no effect such as that urged by the taxpayer but rather only that federal estate tax exemption allowance of

deductibility up to, but not more than, 50% of the gross estate could be taken. Similarly, the deduction is computed as 50% of the net estate *after* estate taxes have been paid. I.R.C. § 2056(b)(4)(A).

■ Subsequently, of course, the *possible* marital deduction grew in 1981 and thereafter to 100%. 26 U.S.C. § 2056 (1981). Yet the proviso that the property would only qualify for the marital deduction to the extent of its actual passing to the surviving spouse still remains intact. Nevertheless, the argument advanced by the taxpayer runs, all that may be true when the diversion from the spouse takes place with respect to property on which the will properly could operate, but not on tenancy by the entireties property, the latter being property passing to the surviving spouse by an instrument totally independent of any testamentary instrument. But diversion in the amount of the benefit from the marital deduction to the surviving spouse is what counts, not whether it was diverted from probate estate property. The diversion, the lessening of the surviving spouse's benefit, is all that matters. *See Bosch,* 387 U.S. at 459, 87 S.Ct. at 1779; *Wycoff,* 506 F.2d at 1150.

That is demonstrated in the case where the decedent retained only a life estate. The remainder would pass outside the will, yet still be part of the gross estate and liable for a proportionate share of the estate tax. I.R.C. § 2036(a). And so too in the case of a revocable trust, construed to require an *inter vivos* revocation by the settlor, in which case the property, included in the settlor's gross estate, would be taxable, even though an attempted testamentary exercise of the power of revocation would be void. *See Estate of John Reid,* 90 T.C. 304 (1988), where the decedent created a revocable *inter vivos* trust granting trustees power "in their discretion" to pay all Illinois inheritance taxes, including the tax on property passing to the surviving spouse, out of nonmarital property. The trustees elected to pay all such taxes out of nonmarital property. The Tax Court found that the marital deduction *was,* nevertheless, reduced by the amount of inheritance tax attributable to marital property. The

discretionary provision in the trust was not sufficient to transfer the tax burden to nonmarital property.

Accordingly, the net estate available for the marital deduction for federal estate tax purposes was just less than it would have been without the diversion to pay the Kentucky real estate's share from the tenancy by the entireties property. The tax ascribable to the amount of the diversion was a proportionate share of the total federal estate tax. Hence the government has it right in saying that it only seeks the correct amount of the estate tax properly proportioned.

The tax is calculated by federal estate tax as it relates to the federal aspects of the federal estate tax. For federal purposes, the will should be given effect regardless of state property law, thus creating under federal estate tax the diversion leading to a reduced marital deduction. The right of the Commissioner of Internal Revenue to *collect* the increase in tax due to the diversion would remain unaffected. There is simply a failure to qualify for the marital deduction.

It would make particularly good sense to adhere to the Virginia solicitude for enforcement of a testamentary provision since to do so will promote equality in federal estate taxation for those similarly situated rather than arrant disparity fortuitously dependent on distinctions in Virginia property law not contemplated or allowed for federal estate tax computation purposes. Indeed, it is not inappropriate to label local property law, as the Supreme Court did in analogous circumstances, as "of complete indifference to the federal fisc." *Estate of Rogers v. Commissioner,* 320 U.S. 410, 414, 64 S.Ct. 172, 174, 88 L.Ed. 134 (1943).

Reno's will should be applied as written. Perhaps it is somewhat repetitious, even perhaps redundant, but the solution of the problem confronting us is a complex one, analogous to the stripping of a pearl's multitudinous layers:

(1) The first of those facets is the original outright ownership by Reno of the property which assumed tenancy by the

entireties status and which is, therefore, subject to federal estate tax. The portion originally owned by or traceable to Reno's widow as the surviving spouse was never even includable in the federal gross estate brought into existence by Reno's death. The remaining decedent's portion, about which we are here concerned, was from the beginning, so far as federal estate tax was concerned, part of his gross estate and fully subject to tax. *Tyler v. United States,* 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991 (1930).

(2) The tenancy by the entireties characteristic of immunity from liability for past, present or future debts or other liabilities of the non-consenting spouse, absent his or her consent, as the only attribute of state law creation, which concerns the aspect of things of possible moment to us, was attributable to, *i.e.,* came about by, the creation of the tenancy by the entireties status occurring a number of years prior to Reno's death, *i.e.,* while he was still very much alive. Since the federal estate tax would only come into play upon Reno's death (death is the "generating source" of the federal estate tax, *Tyler,* 281 U.S. at 502, 504, 50 S.Ct. at 358, 359) and even then would affect interests theretofore held as tenancy by the entireties property only if Reno's wife should survive him,[7] it is difficult to conceive of the wife's interest as a tenant by the entireties as possessing, from the time it was created, that is when it first came into existence, a property of immunity from being required perhaps to pay some of the federal estate tax levied against the estate of the first tenant to die.

(3) The possibility of Reno's wife surviving him was purely a contingent one, arising only if Reno should be the first to die, for Reno, so long as he remained alive, had a contingent fee simple absolute, *i.e.,* he might outlive his wife. His ultimate interest was undeterminable until the moment of his death, or, at least, of the prior decease of his wife. Should he die first, under the teaching of *Tyler,* all of the erstwhile tenancy by the entireties proper-

ty would, because of the contingency ending only on his death, nevertheless be part of the gross estate of Reno for federal estate tax purposes. If, alternatively, she was the first to die, the property would be owned outright by him and, upon his subsequent death, would be part of his probate estate.

(4) That illustrates that Congressional purpose was to minimize or eliminate dual taxation of the estates of a married couple. *United States v. Stapf,* 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (1963) ("[T]he primary thrust ... is to extend to taxpayers in common law states the advantages of 'estate splitting' otherwise available only in community property states."). Congress never dreamed that certain property included in the gross estate should automatically be exempt from federal estate tax, irrespective of a will provision to the exact opposite.

(5) Simply put, federal law, supreme in nature over state law under the United States Constitution, art. VI, clause 2, controlled.

(6) At the time, therefore, that Reno's will became operative, the very earliest occasion that he could direct payment of federal estate tax on the Kentucky realty from "tenancy by the entireties" (more accurately former but no longer "tenancy by the entireties") property, the payment was not directed toward satisfaction of a debt of Reno but at a debt of the estate itself. *Nemo est haeres viventis.*

(7) At the outset, the federal estate tax calculated for federal estate purposes was to be borne out of the estate as a whole with state laws to play a part with respect only to what thereafter should remain. *Riggs v. Del Drago,* 317 U.S. 95, 97–98, 63 S.Ct. 109, 110, 87 L.Ed. 106 (1942).

(8) The introduction of the marital deduction (first a maximum of 50% of the federal gross estate from 1948 on, later increasing in 1981 and thereafter to 100%) effected no change, insofar as the factors which interest us are concerned, the limitation on the

---

7. If she died first, there would be no tenancy by the entireties property for federal estate tax to operate on at his death.

marital deduction still requiring *actual* passage to, *i.e.*, beneficial enjoyment by, the spouse, free of diminution, to remain in full force and effect. Indeed, we have seen that for estates of those dying from 1948 to 1981 whenever the marital deduction exceeded 50% of the gross estate the tenancy by the entireties property remained subject to the tax. Tax remained payable from the "excessive" "tenancy by the entireties" property despite state (here Virginia) tenancy by the entireties law. In other words, to be disregarded, as a "mere legal fiction," is any "consideration of the artificial rules which delimit the title, rights and powers of tenants by the entirety at common law." *Tyler*, 281 U.S. at 503, 50 S.Ct. at 359.

(9) The Virginia state law permitting apportionment plays no part because the tax otherwise attributable to Kentucky real estate is in point of fact mandated by will against the at one time tenancy by the entireties property. It, therefore, does not qualify for the marital deduction, is one portion of the net taxable estate and is apportioned.

(10) Q.E.D.[8]

The result is a fair one for it avoids the unsightly spectacle of a wife and daughter fighting to void a testamentary desire of a husband and father clearly expressed in that relative's will. For a loss of marital deduction of $25,981, a figure subject to some probable reductions, that somewhat ungracious result is sought to be obtained at the price of frustrating the wish and intent of the husband, in one case, or father, in the other, who was the provider of all the assets which had been in tenancy by the entireties form, and as such included in the federal gross estate.

What is perhaps worse, such a method of proceeding would burden the daughter with some tax onus of which the testator clearly had wished she should be free. Af-

---

**8.** In Euclidean geometry one sometimes encounters an alternative theorem or corollary. Here one rears its head.

Assume an exactly identical set of circumstances as the one actually confronting us, with the sole distinction that, in lieu of Alternative (1), namely, the 88% in property being traceable to Reno in Alternative (1), having been put in tenancy by the entireties form, while, under Alternative (2), Reno would retain title up to the instance of his death. By his will, to keep the supposition of essential identity, we should assume that the 88% property interest would have been bequeathed by Reno to pass outright in fee to his wife (who all along continued her ownership in the other 12%).

The results would be exactly the same, from a tax point of view, under both alternatives. In either event, 100% of the property interest would, all along as to part (12%), have belonged to Barbara Reno while the remaining 88% would pass from Reno to his surviving spouse. The 12% would not be taxed in Reno's estate on both theories. The 88% would be part of Reno's gross estate whichever alternative is considered. The federal estate tax would be undeterminable during all of Reno's life whichever route was followed. Value fluctuations, together with the possibility of changes in the law, would frustrate such a calculation during his lifetime. Those considerations would operate if the 88% were owned by Reno outright but also in the case of tenancy by the entireties titling, not to mention any further complications attributable to not knowing who would be the first to die.

Of course, on one of the two theories she will have had, during Reno's life, her interest as tenant by the entireties, while, on the other, she would have had no interest, other than the fee in 12% and a possibility of dower in the rest, up to the time of his death (when, however, the will becomes immediately effective, assuming she has outlived him). She will have, upon Reno's death, a fee simple interest whichever of the two approaches is considered. It is true that in the tenancy by the entireties assumption she has whatever benefits that there are adhering to such status, but they are of truly negligible, really of minuscule value, insofar as the "death generating" federal estate tax is concerned. Barbara Reno, because of the tenancy by the entireties status, could frustrate any invasion by her husband, but she was subject to just as complete a power of frustration, flowing from the tenancy by the entireties status, lodged in Reno as her spouse allowing him to frustrate any invasion by her.

Thus the difference, such as it was, completely evaporated at Reno's death, the time when the tax first arose. There is, consequently, no basis for differing treatment for federal estate tax purposes. There is no doubt that Reno's holding title in himself until death, but providing by will for fee simple title to pass to his wife without delay upon his death, would have precisely the same effect as if entireties titling had been employed. The fee simple retention with the property passing at death to his wife would unquestionably permit the will provision over whose validity *vel non* the contest has raged to be given full force and effect. Things equal to the same thing are equal to each other. Hence the tenancy by the entireties titling alternative should lead to the same result, be taxable to the same extent.

fection for her mother doubtless has impelled the daughter to be willing to assume the burden, but the situation would also quite possibly activate a lawyer conversant with property devolution law to suggest "a way around" any such burdening of the daughter. We do not mean to imply that a questionable method of escaping tax motivated the Reno family or the lawyer, who was incidentally the daughter's husband, representing the family. Still we speak to establish the law applicable in general, not just in the case of the Reno estate.

The mother might be advised to give to the daughter the amount of federal estate tax the mother would save as a beneficiary of the estate but which the daughter would thereby end up paying despite the will provision calling for the precise contrary. And that could be done tax free in only a short time, bearing in mind the annual $10,000 exclusion from the gift tax, and possibly an even shorter time since the daughter is married so the annual exclusion available would be $20,000. A $25,981 loss in marital deduction probably means in actual dollars and cents a total of no more than $12,991.

Those gyrations, if allowed scope here, would bring in the end a total frustration of the intent of Congress expressed in the federal estate tax law, namely, that property otherwise qualifying for the marital deduction would have finally to end up beneficially in the decedent's surviving spouse for the marital deduction to apply. To carry out Congressional intent, the decision of the Tax Court should be

AFFIRMED.

K.K. HALL, Circuit Judge, dissenting:

I believe that the Tax Court misapplied the Virginia apportionment statute. Accordingly, I would reverse.

1. I disagree, however, that Dr. Reno had any intention of subjecting the entireties property to estate tax. At footnote 4, the majority posits a plausible theory that he so intended, but I think it far more likely that the testator expected his probate assets other than the Kentucky real estate to satisfy estate tax, especially inasmuch as those assets would have been sufficient when the will was executed.

## I.

I agree that Reno's will manifests an intent to shield the Kentucky property from the burden of estate tax.[1] Nonetheless, a testator's intent can be carried out only if it is legal and the structure of his estate at the time of his death permits. If, when Reno died, his estate had consisted solely of the Kentucky realty, his direction that "other assets" be used to pay estate taxes would necessarily have been ineffective. The same result would occur if the "other assets" were insufficient to pay the estate tax.

The Tax Court's decision is necessarily premised on its reading of "the assets of my estate other than Kentucky real estate" as being coextensive with the definition of "gross estate" in federal estate tax law. However, it does not necessarily follow that, simply because property falls within the federal definition of gross estate, a decedent may place burdens on that property that are inconsistent with the rights of others. During his lifetime, Reno was powerless to impair his wife's interest in property held by the entireties without her consent. The majority's endorsement of the Tax Court's decision allows a massive impairment of that interest at Reno's death. I believe that this result was not intended by the testator, and contravenes the wife's state-law property rights to a greater extent than is contemplated by either the state or federal statutes.

## II.

The Internal Revenue Code definition of "gross estate" does not preempt state law regarding apportionment of estate tax among assets of that estate. *Riggs v. Del Drago,* 317 U.S. 95, 97–98, 63 S.Ct. 109, 110, 87 L.Ed. 106. Though federal law determines the extent of the "estate" and the rate at which the estate is taxed, the states are free to provide for any appor-

Moreover, because property held by the entireties passes outside of a testator's will in Virginia, I would not assume that the entireties property was an "asset" of Reno's "estate" to which he referred when attempting to shield the Kentucky realty from estate tax.

tionment scheme they deem best for their respective residents. Virginia's scheme is simple: each beneficiary bears tax in proportion to the value of the property he has received. However, each may take full advantage of all exemptions, deductions and exclusions available under federal law. Va.Code Ann. § 64.1–161. As the majority acknowledges, in the absence of a will, property held by the entireties in Virginia passes free of federal estate tax.

I part company with the majority in its reading of Va.Code Ann. § 64.1–165. Though that section generally gives a testator the right to designate a particular fund or funds out of which estate taxes are to be paid, I do not believe that it bestows a power to disproportionally impair a surviving spouse's interest in property held by the entireties. Section 64.1–165 allows the testator to override the default apportionment scheme of § 64.1–161. It does not permit him to override the property rights of others.

Unlike some other states, Virginia permits married couples to hold property by the entireties. *Vasilion v. Vasilion*, 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951). A husband may not obligate entireties property or subject it to his debts without the consent of his wife. *Id.; In re Bishop*, 482 F.2d 381, 383 (4th Cir.1973); *In re Saunders*, 365 F.Supp. 1351, 1352–53 (W.D.Va. 1973). Consequently, a purported sale or mortgage of the property to which the wife does not consent is ineffective. *Johnson v. McCarty*, 202 Va. 49, 55–56, 115 S.E.2d 915, 920 (1960). Furthermore, and most importantly for this case, upon the death of one spouse, fee title simply remains in the other by operation of law. *Vasilion*, 192 Va. at 740, 66 S.E.2d at 602. No will is necessary; no reference to the law of intestate succession is necessary. A testator is absolutely powerless to alienate the property from his spouse. Any provisions in the

will purporting to do so are necessarily inoperative. "This is so ... because in the first instance [the survivor] took the entirety...." *Id.*

Of course, by including property held by the entireties in a decedent's "gross estate," the federal tax code has partially overridden the property rights of Virginians who hold property in that manner. The purpose of this inclusion is plain—if property held by the entireties were suddenly excluded from calculation of federal estate tax, there would doubtless be an avalanche of straw party deeds descending upon Virginia county courthouses. Nonetheless, I am unwilling to extend a provision designed to make the federal estate tax responsive to the actual amount of wealth passing from one generation to another so as to do such violence to state-law property rights.

First of all, Congress provided a marital deduction that would effectively exempt entireties property from estate tax, and deferred apportionment of tax to the states. These actions strongly evince a Congressional intent to make the estate tax's intrusion into state property law as limited as necessary to effect the purpose of the tax.

Second, we should not read two laws of Virginia in such a manner that they irreconcilably collide. The majority holds that Va.Code Ann. § 64.1–165 permits a testator to designate entireties property as a fund from which estate tax should be disproportionally paid. Though a testator is unequivocally forbidden to alienate entireties property by his will, the majority's construction of § 64.1–165 would permit a testator to do the functional equivalent by simply designating his entireties property as the fund from which all estate taxes are to be paid.[2] A surviving spouse who must sell her property to pay estate taxes gener-

2. *Baylor v. National Bank of Commerce of Norfolk*, 194 Va. 1, 72 S.E.2d 282 (1952), upon which the majority relies, is inapposite. The issue in *Baylor* was whether a testator could force property he devised to his spouse *by will* to bear estate tax. Inasmuch as the testator had the power to give the property, he had the power to limit the gift. Unlike the testator in *Baylor*, Dr. Reno had no testamentary power

whatsoever over the disposition of the entireties property. Of identical import is this court's decision in *Wisely v. United States*, 893 F.2d 660 (4th Cir.1990). The owner of the cookie jar may dole out his treats as he wishes, but it does not follow that he may raid someone else's jar to feed a hungry tax collector, even if that be his desire and intent.

970

ated by property devised to others will take no solace in her husband's inability to directly alienate the property. I cannot accept that the Virginia legislature intended to abrogate longstanding property law by enacting a tax apportionment statute. Therefore, I would reverse the decision of the Tax Court.

I respectfully dissent.

On Petition for Rehearing with Suggestion for Rehearing In Banc Jan. 4, 1991.

The appellants' petition for rehearing and suggestion for rehearing in banc were submitted to the Court. A majority of judges having voted in a requested poll of the Court to grant rehearing in banc,

IT IS ORDERED that the rehearing in banc is granted.

IT IS FURTHER ORDERED that this case shall be calendared for argument at the April, 1991 session of Court. Within ten days of the date of this order 5 additional copies of appellant's brief and reply brief and 5 additional copies of appellees brief shall be filed and appellant will file 10 additional copies of the joint appendix.