**Lee MARTIN, Executor of the Estate of Esther S. Martin and Trustee of the Esther S. Martin Living Trust, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

Nos. 90–2060, 90–3339.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1990.

Decided Jan. 15, 1991.

Scott A. Brainerd, Chicago, Ill., for plaintiff-appellee.

Mark Winer, Dept. of Justice, Tax Division, Washington, D.C., Andrew B. Baker, Jr., Asst. U.S. Atty., Office of the United States Attorney, Hammond, Ind., Clifford D. Johnson, Asst. U.S. Atty., Office of the United States Attorney, South Bend, Ind., Gary R. Allen, Kenneth L. Greene, John A. Dudeck, Jr., Dept. of Justice, Tax Division, Washington, D.C., for the U.S.

Before COFFEY, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The author of a will may specify which bequests pay the taxes and costs of administering the estate. A will may provide, for example, that 50% of the gross assets go to the testator's spouse and the rest to the children, whose portion will be tapped for all taxes and costs. Apportionment may cut down on taxes. Bequests to one's spouse are excluded from the taxable estate. 26 U.S.C. § 2056(a). Until the end of 1981 that deduction was limited to the greater of half of the adjusted gross estate or $250,000. 26 U.S.C. § 2056(c)(1)(A). Esther S. Martin tried to give exactly half of her adjusted gross estate to her husband. In order to minimize taxes, she specified that this bequest could not be charged

with costs or taxes. Federal and state law alike honor such requests. *Riggs v. del Drago*, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); *Estate of Reno v. CIR*, 916 F.2d 955 (4th Cir.1990); Ind.Code § 29–2–12–7 (1980). We must decide what happens when the property remaining in the estate after honoring such a request is insufficient to meet acknowledged taxes and expenses.

Esther Martin died in 1981, before the amendment to the Code removing the 50% cap on the marital deduction. Her assets, including insurance proceeds, came to about $14,400; of this only $3,254 was in the estate admitted to probate. She was the life tenant of a trust in which her husband Ross held the remainder interest. The trust was worth $781,764 on the date of her death. During the three years preceding her death Esther had given away another $852,060. The Code treats as part of the estate all property in which the decedent held a life estate and all property transferred during the three years before death. 26 U.S.C. §§ 2035(a), 2036. Esther's gross estate was therefore $1,648,250, of which Ross was to receive the remainder interest in the trust, plus everything else Esther possessed at death up to half of the gross estate. Lee Martin, their son and the executor of Esther's estate, computed the marital deduction as $796,190, a little less than half of the gross. Because the bulk of the lifetime gifts went to charity and was therefore deductible, Lee calculated a total estate tax of $43,815.18, which the estate paid in January 1982. The estate reported expenses of $27,013 and state taxes of $2,024.

The difficulty is that the estate did not *have* $72,852 to cover the state and federal taxes plus the costs of administration. It had only a tad more than $3,000. The rest of the property passed outside the estate—through the trust, through *inter vivos* gifts, through life insurance, through joint interests in property. Although the estate wrote out the checks, the Commissioner of Internal Revenue thought that the money must have come from the trust. None of Esther's lifetime bequests could be charged with the taxes and administrative expenses,

for they were beyond her control at the time of her death. The trust instrument required the trustee (Lee) to "pay from the trust estate all of the legal obligations of her estate and all inheritance and estate taxes becoming due because of [Esther's] death." If it paid the taxes and expenses, Ross necessarily received less. Under 26 U.S.C. § 2056(b)(4) the estate may deduct only the net amounts the spouse actually receives; see also *United States v. Stapf*, 375 U.S. 118, 128, 84 S.Ct. 248, 255–56, 11 L.Ed.2d 195 (1963); *Murray v. United States*, 687 F.2d 386, 390–91 (Ct.Cl.1982); 26 C.F.R. 20.2056(b)–4(a). So the Commissioner reduced the deduction by the $69,000 difference between the probate property and the taxes and expenses concededly due. Because this reduction exposed the estate to further taxes, he made an "interrelated calculation" of tax and deduction (bureaucratic jargon for the calculus). The upshot was a conclusion that Ross received only $700,358, and that the estate owed an extra $22,972 in taxes, plus interest. Lee paid and sued for a refund. We held in *Martin v. United States*, 833 F.2d 655 (7th Cir. 1987), that the request for a refund of the tax paid in 1982 was untimely. Now we must decide whether the estate gets back the $22,972 paid in 1985 and 1986 plus interest. (The amounts paid in 1982 are no longer in issue.)

The estate relies on the principle that the testator may designate the source of taxes and administrative expenses. If the named sources are insufficient, other bequests will abate in order to supply the necessary cash. E.g., *Estate of Leeds*, 54 T.C. 781 (1970). No one doubts that Esther wanted to leave half of her *gross* estate to her husband to maximize the marital deduction. The will contains a formula bequest: "I give to my husband a pecuniary amount equal to the maximum marital deduction allowable to my estate for Federal estate tax purposes". It follows, Lee submits, that the estate obtains the full $796,190 deduction. The district court agreed, 1990 WL 208731, 1990 U.S. Dist. LEXIS 3190 (N.D.Ind.), and thought this so clear that it ordered the United States to pay the es-

tate's legal expenses under 26 U.S.C. § 7430, 1990 U.S. Dist. LEXIS 11597.

With the legal principles underlying the district court's decision we have no dispute. Whether a will may make such a formula bequest is a question of state law, see *Riggs*, and Indiana allows such bequests. Yet this is unimportant unless there are other bequests to abate, as there were in *Leeds*. Here there are none. Under the formula of the will, *all* of Esther's remaining property went to her husband. No other bequests could be abated to satisfy taxes. The estate could not retrieve the lifetime gifts (and if it could would be no better off, for recoupment would reduce the charitable deduction and yield the same taxes as the reduction in the marital deduction did). Ross's bequest, via the trust, was the only fund available to satisfy taxes and expenses. Because § 2056(b)(4) allows the deduction only for the amount the spouse actually receives, the unavailability of other sources leaves no alternative to the Commissioner's calculation. It is telling that the estate did not proffer evidence that the initial $43,815 for taxes and $27,013 for administration came from a source other than the corpus of the trust. Indeed the estate has not even *asserted* that there was another source. At oral argument in this court, the estate insisted that the actual source is irrelevant. Given § 2056(b)(4), that cannot be.

Lee observes that never in the history of the estate tax has a court reduced the marital share in the teeth of a maximum formula bequest. Perhaps so, but we could not find another case in which the decedent gave away more than half of the estate during life, leaving behind nothing but the marital bequest. Because giving every remaining penny to Ross did not produce a 50% marital share, the estate was charged with some taxes; because these could be satisfied only out of the marital bequest, a further reduction (the "interrelated computation") was essential. Had Esther been less generous during her life, and the estate larger on her death, the taxes would have been smaller. What might have happened did not happen; the Commissioner computed the tax properly given the estate's actual contents.

REVERSED